**JOINT BOARD OF CLOAK, SKIRT AND DRESSMAKERS UNION OF the INTERNATIONAL LADIES' GARMENT WORKERS UNION, AFL-CIO, Plaintiff,**

v.

**SENCO, INC., and Maco Clothing Corporation, Defendants.**

**Civ. A. No. 68-45-G.**

United States District Court
D. Massachusetts.

Aug. 28, 1968.

516

John D. O'Reilly, III, Segal & Flamm, Boston, Mass., Leonard Greenwald, New York City, for plaintiff.

Melvin Pierce, Cornelius J. Moynihan, Jr., Peabody, Brown, Rowley & Storey, Lepie & Coven, Boston, Mass., for defendants.

MEMORANDUM OF DECISION

GARRITY, District Judge.

This action, arising under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, was brought by plaintiff to obtain enforcement of an arbitration award.[1] It is presently before the court on cross motions for summary judgment filed by all three parties.

The undisputed facts follow. Plaintiff is an unincorporated labor organization composed of various locals of the International Ladies' Garment Workers' Union, AFL–CIO, and represents employees in the ladies' garment industry. Defendants Senco, Inc. (Senco) and

---

1. This is not the first time that the incidents which are the basis of this action have been considered by this court. See

Greene v. Senco, Inc., D.Mass., 1968, 282 F.Supp. 690.

Maco Clothing Corporation (Maco) are Massachusetts corporations which are engaged in the manufacture of ladies' garments.[2]

On January 4, 1965, a collective bargaining agreement was entered into between plaintiff and the Association of Garment Contractors, Inc. (the Association). Senco was at that time a member of the Association and was consequently bound by the agreement. The agreement was effective for the period March 17, 1964 through February 15, 1967.

Under Articles 35 and 36 of the agreement, any unresolved dispute is to be submitted for final decision to an Impartial Chairman. Article 69 provides that subsidiary, auxiliary or affiliated firms or corporations shall be bound by the terms of the agreement. Plaintiff alleges that Maco is such a firm or corporation.

On January 24, 1967, plaintiff submitted to the Impartial Chairman an unresolved complaint that Senco and Maco had violated the agreement in a number of respects and requested damages and other relief. On February 1, 1967 the original of a letter from the General Counsel of plaintiff to the Impartial Chairman demanding arbitration was sent by certified mail to Senco at 104 Meridian Street, East Boston, Massachusetts,[3] and was returned by the Post Office marked "refused." On February 2, 1967, two copies of the same letter were served at the premises of Senco upon Irene Rotondi.[4] On the same date, two copies of the same letter were served at the premises of Maco upon Henry Senese. Upon being served with these papers, Senese threw the letters to the floor of the Maco plant and pushed them with his foot through an open door onto the sidewalk in front of Maco. On February 6, 1967, the original of a letter from the General Counsel of plaintiff to the alternate Impartial Chairman (the arbitrator) was sent by certified mail to Senese and Senco at 104 Meridian Street and was returned by the Post Office marked "refused." On February 10, 1967 the arbitrator informed the following persons by registered letter that an arbitration hearing would be held on February 21, 1967 in the Boston Municipal Courthouse: Mrs. Phyllis Bocchino c/o Mako Clothing[5] Corporation, Maco, David Lavien (counsel for the Association), Senco and Senese. The letters to Bocchino, Maco and Lavien were all accepted but the letters to Senco and Senese were returned by the Post Office marked "refused."

The hearing on the demand for arbitration was opened by the arbitrator on February 21, 1967. No appearance or request for continuance was filed for Senco or Maco. The arbitrator continued the hearing until March 14, 1967. On February 23, 1967, subpoenas duces tecum were issued by the arbitrator to the following persons to appear at the hearing on March 14, 1967: Bocchino c/o Maco, Maco (through Bocchino), and Senco (through Senese). Service of the

2. The court's statement that Senco's present operation is undisputed is based upon the allegation in plaintiff's verified complaint that Senco is presently operating. Although this allegation is denied in Senco's answer, that answer is not verified. The truth of the matter is probably more accurately set out in this court's finding in Greene v. Senco, Inc., supra at 694, that Senco "closed down its operations sometime in March, 1967." However, since neither party has argued that this finding has collateral estoppel effect and since the issue of Senco's present operation is of no apparent legal significance, the court has not incorporated that finding into its statement of undisputed facts.

3. There is no contention that this is not the proper address of Senco.

4. The plaintiff's business agent served the papers upon Rotondi and refers to her in his affidavit as "the managing officer of Senco, Inc." The court agrees with Senco that this description would not be admissible in evidence, Rule 56(e), Fed.R.Civ.P., and it has consequently been disregarded.

5. No point has been made of the misspelling of Maco's name.

former two subpoenas was effected on March 3, 1967; service of the latter subpoena could not be effected. On February 27, 1967 telegrams were sent with notice of the hearing date of March 14, 1967 at the Boston Municipal Court to the following persons: Maco, Bocchino c/o Maco, Senco, and Senese. Registered letters confirming the telegrams and enclosing copies thereof were also sent to each of the above parties. The telegrams and letters to Bocchino and Maco were accepted but those to Senco and Senese were refused. On March 10, 1967 counsel for Bocchino and Maco wrote to the arbitrator that neither of his clients would attend the March 14th hearing because, among other things, they were not bound by the agreement.

A hearing was held on March 14, 1967, at which neither Senco nor Maco was present. On October 27, 1967 the arbitrator issued his opinion and award. Among other things, he found pursuant to Article 69 of the agreement that Maco was a subsidiary of Senco. Senco and Maco have failed to comply with the terms of the arbitrator's opinion and award.

In this opinion, the court will treat separately the obligations of the two defendants under the arbitrator's opinion and award. Part I will deal with Senco.

### A. Notice

█ As a preliminary argument, Senco contends that the award of the arbitrator is null and void because it is based on an arbitration hearing of which it did not receive proper notice. Specifically, it is argued that according to the dissenting opinions [6] in Hanner v. DeMarcus, 1968, 390 U.S. 736, 88 S.Ct. 1437, 20 L.Ed.2d 270, due process re-

quires actual notice wherever possible. Senco overlooks the basic fact that the due process clause of the Fourteenth Amendment applies only to state action. In *Hanner*, the issue before the Court was whether a state rule of civil procedure required actual notice of execution. Even if the views of the dissenters were the law, they would not be applicable in the present case which involves the determination of the form of notice provided for in an agreement between private parties.

█ The question is whether the notice of the hearing provided to Senco is proper under the provisions of the agreement. But prior even to this determination is the issue whether the court or the arbitrator is to decide whether the contractual requirements have been complied with. Ordinarily, the question of arbitrability (i. e., those issues which the agreement empowers the arbitrator to decide) is one for the courts to determine on the basis of the contract entered into by the parties, Atkinson v. Sinclair Refining Co., 1962, 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed. 2d 462, i. e., the power of the arbitrator is ordinarily circumscribed by the terms of the collective bargaining agreement as interpreted by the courts. However, the parties to an agreement may agree that the arbitrator may himself determine arbitrability. Teamsters Local Unions, etc. v. Braswell Motor Freight Lines, 5 Cir., 1968, 392 F.2d 1, 6 n. 6; Metal Products Workers Union, Local 1645, U.A.W.–A.F.L.–C.I.O. v. Torrington Co., 2 Cir., 1966, 358 F.2d 103, 105. In such cases, the arbitrator is in effect empowered to decide what the agreement empowers him to decide.[7]

---

6. In *Hanner* the Court dismissed the writ of certiorari as improvidently granted. Four Justices dissented in two separate opinions.

7. *Braswell* seems to suggest that the decision of an arbitrator, empowered to decide arbitrability, that a matter is arbitrable is reviewable by a court. 392 F.2d at 6 n. 6. The *Torrington* case ap-

pears to be in disagreement. 358 F.2d at 105. Since the scope of a court's review is usually limited to determining arbitrability, United Steelworkers of America v. American Mfg. Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, it is conceptually difficult to conceive of any judicial review when that matter has been left to the arbitrator. However, it has been wisely suggested that a court

The authority to determine what is arbitrable has been granted to the arbitrator in the present case by virtue of Article 35(E) of the agreement:

[H]e (the arbitrator) shall have power to determine his jurisdiction, all questions of arbitrability and to grant all appropriate remedies.

Although the arbitrator has not specifically decided that the question of what constitutes proper notice is arbitrable, he recounts his various attempts to notify Senco of the hearing and concludes that "all parties were given full opportunity to appear and present evidence." His discussion and conclusion on the question indicate a preliminary conclusion that it is arbitrable.

Even in the absence of a provision empowering the arbitrator to determine the issue of arbitrability, it has been decided that procedural questions growing out of a dispute that is otherwise subject to arbitration are to be decided by the arbitrator. Livingston v. John Wiley & Sons, 1964, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898. In *Wiley*, the Court in effect adopted a *per se* rule of arbitrability with respect to such procedural questions. See, Note, Procedural Arbitrability Under Section 301 of the LMRA, 73 Yale L.J. 1459 (1964). In Luckenbach Overseas Corp. v. Curran, S.D.N.Y., 1968, 57 CCH Lab.Cas. ¶ 12, 636, the court, relying upon *Wiley*, specifically decided that the question of what constitutes proper notice is to be decided by the arbitrator.

In view of the *Wiley* and *Luckenbach* decisions, the presumption of arbitrability articulated in United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed. 1409,[8]

and the authority of the arbitrator to determine arbitrability, the court will not overturn the arbitrator's tacit conclusion that the issue of proper notice was arbitrable. With respect to the arbitrator's decision that the notice conformed to the requirements of the agreement, the court's scope of review is quite narrow at best. In reaching his decision on an arbitrable matter, "an arbitrator is confined to interpretation and application of the collective bargaining agreement." United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424. Accordingly, his decision can be set aside only if it is clear that it is not based upon the agreement. Safeway Stores v. American Bakery & Con. W.I.U., Local 111, supra 390 F.2d at 82.

Although there is no specific provision in the agreement as to the form of notice of hearing, Article 37 indicates what the parties accepted to be proper notice of demand for arbitration. That article limits the right of plaintiff to strike to certain circumstances one of which is as follows:

Where the Employer refuses to go to Arbitration within 24 hours after a written demand for arbitration is sent by registered mail or delivered in hand by the Union.

As Senco has argued, there is a distinction between notice of a demand for arbitration and notice of an arbitrator's hearing. However, it is fairly inferable that if notice by registered mail has been expressly agreed upon with respect to the former, it has been implicitly agreed upon with respect to the latter. Certainly, if Senco believed that a more stringent method of notice should be required with respect to a hearing, it is reasonable to suppose that it would have

---

may always set aside "palpably faulty" decisions by an arbitrator. Safeway Stores v. American Bakery & Con. W. I. U., Local 111, 5 Cir., 1968, 390 F.2d 79, 82. Cf. note 9 infra.

8. "An order to arbitrate the particular grievance should not be denied unless

it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." 363 U.S. 582–583, 80 S.Ct. 1353.

insisted upon a provision negating the approval which Article 37 accords to notice by registered mail. In any event, it cannot be said that such reasoning indicates that the arbitrator's decision was clearly not based upon the agreement.[9] Indeed, it would be highly unreasonable to assume that the parties to the agreement intended that the abundant notice which was directed toward Senco could so contemptuously be ignored, thereby invalidating any subsequent arbitration.

### B. Ex Parte Arbitration

Senco also contends that the arbitrator's award is null and void because based on *ex parte* arbitration proceedings neither agreed to in the collective bargaining agreement nor authorized by any enabling statute.[10] With respect to the agreement, Senco points to the fact that there is no express provision permitting *ex parte* arbitration and argues that Article 39 of the agreement indicates that *ex parte* arbitration was neither contemplated nor agreed to. The entire text of that article follows:

> 39. *COURT ACTIONS AND SUITS TO ENFORCE AGREEMENT PROHIBITED.* It is the intention and agreement of the parties that the procedure established in this Agreement for the adjustment of disputes shall be the exclusive means for the determination of all disputes, complaints, or grievances specified herein, expressly including all strikes, stoppages, lockouts and any and all claims, demands or acts arising therefrom. *Neither party shall institute any proceedings in any administrative agency or a court of law or equity other than to compel arbitration, as provided in this Agreement, or to enforce the award of the Impartial Chairman.* This provision shall be a complete defense to any action instituted contrary to this Agreement. (Emphasis added.)

Senco's argument is grounded upon the emphasized language. Simply stated, it is that if *ex parte* arbitration were permissible under the agreement, then this language reserving the right to sue to compel arbitration would be superfluous. In addition, Senco contends that if the agreement provided for *ex parte* arbitration, it would be pointless to preserve the right to sue to compel arbitration because a party seeking to compel arbitration would be denied standing to do so on the ground that *ex parte* arbitration is its only remedy under the agreement. The court rejects both arguments for the following reasons. The heading of Article 39, "COURT ACTIONS AND SUITS TO ENFORCE AGREEMENT PROHIBITED," demonstrates that the purpose of the language relied upon by Senco was to prohibit any party from bringing an independent extra-arbitral action for breach of the collective bargaining agreement. Accordingly, though the language "other than to compel arbitration" indicates the intention and expectation of the parties that a suit to compel arbitration would be an available remedy, it does not reveal an intention to single out that remedy as the exclusive one and to thereby negate the availability of *ex parte* arbitration. Such an intention would be inconsistent with Article 35(E) which, as already noted, gives to the arbitrator the power to determine arbitrability. Since the only question before a court

---

9. In Safeway Stores v. American Bakery & Con. W. I. U., Local 111, supra 390 F.2d at 82, the court assumes, without deciding, "that if the reasoning [of the arbitrator] is so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling then the Court can strike down the award." This assumption would not require the striking down of the arbitrator's award in the present case.

10. Because the court finds authorization for *ex parte* arbitration in the agreement it has not considered whether such arbitration is authorized under any enabling statute. See Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 466, 77 S.Ct. 912, 1 L.Ed.2d 972 (dissenting opinion).

in a suit to compel arbitration is whether the particular matter is arbitrable, the clear expression of an intention to have this question resolved by the arbitartor makes it highly unlikely that the parties intended that a suit to compel arbitration would be the exclusive remedy under the agreement. Article 39 merely exhibits an intention to make a suit to compel arbitration a permissible, rather than the exclusive, remedy for breach of the agreement.

 Nor does the court find in Article 37 an intention to single out a suit to compel arbitration as the only remedy available to a party who wishes to arbitrate. That Article is headed "Strikes" and merely provides an exception to plaintiff's obligation not to strike in the event that an employer refuses to arbitrate. There is no suggestion that a strike is plaintiff's sole remedy if an employer refuses to go to arbitration.

Though neither Article 39 nor Article 37 denies the availability of *ex parte* arbitration, they do not affirm its availability. For further enlightenment on the question whether *ex parte* arbitration is available under the agreement, the court turns to the case of Amalgamated Meat Cutters and Butcher Workmen of North America, No. 385 A.F.L.-C.I.O. v. Penobscot Poultry Co., D.Me., 1961, 200 F.Supp. 879, which is almost on all fours with the present case.

 *Amalgamated Meat Cutters* was also a suit to enforce an *ex parte* arbitration award. The agreement in that case provided that, in the event the parties could not otherwise negotiate a grievance, the parties were to submit it to arbitration before a third disinterested party to be chosen by the parties. If the parties were unable to choose a third party, he was to be designated by the State Board of Conciliation and Arbitration.[11] In enforcing the arbitrator's award, Judge Gignoux stated:

"Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S. Ct. 912, 1 L.Ed.2d 972 (1957) * * authorizes injunctive relief where a court order is necessary in order for the arbitration to proceed. It does not follow, however, that an injunction must be sought in every case where one party refuses to proceed with an arbitration. If, as here, the contract requires no affirmative action by the defaulting party to submit matters to arbitration, there is no occasion to invoke the remedy provided by Lincoln Mills. Such a remedy is necessary only in those cases where one party refuses to participate in the arbitration, and the arbitration may not proceed under the provisions of the contract without a court order."

See also Ulene v. LaVida Sportswear Co., 1963, 220 Cal.App.2d 335, 34 Cal. Rptr. 36. In the instant case, as in *Amalgamated Meat Cutters,* no affirmative action by the defaulting party is required in order to submit matters to arbitration.

 Senco attempts to distinguish *Amalgamated Meat Cutters* on the basis of Judge Gignoux's statement that the company could have gone to court prior to the arbitration and could have raised the question of arbitrability by a suit to enjoin the arbitration, citing Weyerhaeuser Co. Shipping Container Division v. International Brotherhood of Pulp, etc. Workers, 190 F.Supp. 196 (D.C.Me.1960). Senco contends that the language of Article 39 prohibited it from bringing a suit to enjoin the arbitration. The court reiterates its finding that Article 39 was intended to prohibit independent actions for breach of the agreement; just as it was not intended to deny the availability of *ex parte* arbi-

11. To be sure, the present case differs from *Amalgamated Meat Cutters* in that, insofar as can be determined, the agreement in the latter case did not contain language similar to that in Articles 39 and 37 of the present agreement. However, as already discussed, the court does not interpret those articles as negating the availability of *ex parte* arbitration.

tration so also it was not intended to deny the availability of a suit to enjoin arbitration. The latter relief has been held to be available, in the usual case, under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. See *Weyerhaeuser* and the cases discussed therein.

■ If Senco was precluded from bringing a suit to enjoin arbitration, it was not because of Article 39 but rather because of Article 35(E). In a suit to enjoin arbitration, as in a suit to compel arbitration, the sole question before the court is whether the particular matter is arbitrable. If, as here, the parties agree that the issue of arbitrability is to be decided by the arbitrator, the court assumes, without deciding, that a suit to enjoin arbitration will not be available. By virtue of Article 35(E) Senco agreed that the question of arbitrability would be first, if not finally,[12] decided by the arbitrator. If Senco considers this is not an "adequate remedy," it is at least the remedy to which it agreed and, accordingly, the court considers the reasoning of *Amalgamated Meat Cutters* to be applicable to the present case even in the assumed absence of the availability of a suit to enjoin arbitration.

■ The court concludes that both *ex parte* arbitration and a suit to compel arbitration were remedies available to plaintiff upon Senco's breach of the agreement. Plaintiff could choose either remedy. The availability of *ex parte* arbitration does not deny standing to bring a suit to compel arbitration. The cases which Senco cites as conflicting authority are inapposite. Both Standard Magnesium Corp. v. Fuchs, 10 Cir., 1957, 251 F.2d 455, and A/S Ganger Rolf v. Zeeland Transportation, Ltd., S.D.N.Y., 1961, 191 F.Supp. 359, involved agreements in which a specific procedure for *ex parte* arbitration was set up. The specificity of these procedures led the courts to conclude that the parties intended that *ex parte* arbitration was to be the exclusive remedy in the event that one party refused to proceed to arbitration. 251 F.2d at 458 and 191 F. Supp. at 363–364. Such a conclusion would be unwarranted under the terms of the agreement here involved.

Finally, the court rejects Senco's argument that the availability of *ex parte* arbitration makes a suit to compel arbitration, as provided for in Article 39, "unnecessary and supererogatory." *Ex parte* arbitration does not solve all the problems of the non-defaulting party. For example, it might be that the defaulting party is in possession of all the records upon which the arbitrator could base an award. In such circumstances, *ex parte* arbitration would provide no relief to the non-defaulting party so that it would have to sue to compel the defaulting party to appear with its records before the arbitrator.

### C. Senco's Argument that the Arbitrator's Award Exceeds His Authority.

Senco contends that the various elements of the arbitrator's award are in excess of his authority under the agreement and are therefore unenforceable. Before considering each element individually,[13] the court believes that it would be helpful to make some general observations with respect to the provisions of the agreement and principles of interpretation.

■ With respect to the agreement, it should be noted first that Article 36 provides for the submission to arbitration of "any and all disputes, grievances, claims or controversies by and between the Association or Employers who are members of the Association, and the Union". Secondly, as already noted, Article 35(E) empowers the arbitrator "to determine his jurisdiction [and] all ques-

---

12. See notes 7 and 9, supra.

13. The court assumes with the parties that it need not consider the validity of the award *in toto* but may consider the validity of the separate elements of the award. See, generally, 5 Am.Jur.2d, Arbitration and Award §§ 141 and 142.

tions of arbitrability." Thirdly, Article 35(E) also authorizes the arbitrator "to grant all appropriate remedies." To say that the arbitrator has extensive authority under the agreement is an understatement. Accordingly, Senco carries a heavy burden in its attempt to show that the arbitrator's award exceeds his authority.

Senco's burden becomes still heavier when consideration is given to certain principles of interpretation with respect to the powers of an arbitrator under a collective bargaining agreement. The *Steelworkers* cases contain a clear statement of policy favoring the finality of arbitrator's decisions. In particular, with respect to remedies, the Supreme Court stated in United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 597, 80 S.Ct. at 1361:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations.

To be sure, the Court goes on to say that the arbitrator can not go beyond the authority conferred upon him by the agreement. However, the Court reiterates the presumption of arbitrability articulated in United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, 363 U.S. at 582–583, 80 S.Ct. at 1361, when it states:

> [W]e see no reason to assume that this arbitrator has abused the trust the parties confided in him and has not stayed within the areas marked out for his consideration. It is not ap-

parent that he went beyond the submission. 363 U.S. at 598, 80 S.Ct. at 1361.

With these observations and principles in mind, the court has considered the specifics of the award.

The arbitrator found the following facts in his opinion. Senco was a member of the Association and a signatory to the agreement which was to expire on February 15, 1967. Senese managed and controlled Senco. In October of 1966, Senese transferred machinery, equipment and personnel from Senco's two shops to a new shop which he opened under the name of Maco Clothing Corporation. Senco resigned from the Association by letter dated December 9, 1966, one day after negotiations for a new agreement had begun between plaintiff and the Association. Senco refused to be bound by the outcome of the negotiations. On the basis of these findings, the arbitrator concluded that Senco was bound by the agreement. Furthermore, he concluded (citing Retail Associates, Inc., 120 NLRB 388) that Senco's attempted withdrawal from the Association by its letter of December 9, 1966 was untimely because it occurred after negotiations had begun for a new agreement and that Senco was bound by the new agreement on its effective date.[14] Finally, the arbitrator concluded under Article 69 of the agreement that Maco was a subsidiary, auxiliary and affiliated firm of Senco.

Insofar as Senco is concerned,[15] the arbitrator made the following award:

(1) Senco was directed to pay the sum of $114,234.01, to plaintiff within thirty days from the date of the award (October 27, 1967). This amount was apportioned among lost wages, lost fund contributions, lost checked off dues, liquidated damages, and interest, all of

14. The new agreement had not been negotiated as of the date of the arbitrator's hearing.

15. On the basis of his conclusion that Maco was a subsidiary, auxiliary, and af-

filiated firm of Senco, the arbitrator directed his award against both Senco and Maco, referring to them collectively as "the Employer." The extent to which Maco is bound by the award is discussed in Part II of this opinion.

which were computed for a period ending March 31, 1967.

(2) Senco was ordered to return the Maco shop to the location of the former Senco shop or, alternatively, to remain at the Maco location on certain conditions.

(3) Senco was declared bound by the agreement which expired on February 15, 1967, and by any succeeding Association Agreement as of its effective date.

(4) Senco was ordered to grant plaintiff access to its records for the purpose of ascertaining whether Senco was complying with the Association agreements and the terms of the award.

(5) Senco was ordered to cease and desist from doing work for, or in any manner dealing with, jobbers, manufacturers, or contractors not under contract with plaintiff.

■■■ Preliminary to discussing the enforceability of each element of the award, the court rejects Senco's contention that it was not subject to the jurisdiction of the arbitrator because of its letter resigning from the Association on December 9, 1966. Article 61 of the agreement is explicit on this point:

61. *EMPLOYER LIABILITY AND RESPONSIBILITY.* Each Employer regardless whether he is a member of the Association shall be and continue to remain personally and individually liable under this Agreement while it remains in force and effect, according to the terms hereof, irrespective of whether such Employer shall cease to be a member of the Association during the continuance of this Agreement in force and effect, and such liability shall be deemed to have survived the termination of such membership and shall continue while this Agreement remains in force and effect.

Thus, even if it be assumed that the December 9th letter was a valid resignation, it served only to eliminate Senco as a party to any new agreement.

■■■ The court will not enforce that part of the monetary award which is based on "lost wages." Although this element is authorized not only by the "appropriate remedies" language of Article 35(E) but also by specific language in Article 37,[16] it reveals on its face that it does not have the finality and definiteness which is necessary before an arbitrator's award can be enforced. See, e. g., Rosenblum v. Burton Mfg. Co., 1958, 15 Misc.2d 445, 182 N.Y.S.2d 641; 5 Am.Jur.2d, Arbitration and Award § 142.[17] The award of "lost wages" is based on the assumption that the members of the plaintiff union employed by Senco have not received any wages from the time Senco refused to recognize that its employees were members of the plaintiff union to March 31, 1967. The unreality of this assumption is recognized by the arbitrator in footnote 1 of his decision:

I have not offset any interim earnings because the Employer, on whom rested the burden of such proof, failed to appear and offer any proof thereof. Upon request of the Employer, I shall

16. "The impartial chairman shall assess liquidated damages covering losses sustained by the workers and the Union and offsetting the advantages gained where he finds that the Employer has violated any Section of this Agreement."

17. The substantive law to be applied in suits under § 301 is federal law. Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972. This law must be fashioned from the policy of the federal labor laws. Nevertheless, since federal law in this area is still in a state of development, "state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy." Textile Workers Union of America v. Lincoln Mills, supra at 457, 77 S.Ct. at 918. Accordingly, the court has relied upon general principles of arbitration based upon state law in order to determine the finality of the instant award with respect to lost wages.

convene a hearing to consider this question.

The award with respect to lost wages is no less tentative because Senco has apparently failed to request a hearing. In Senco's absence it is difficult to conceive how the arbitrator could render a final award with respect to lost wages since the information in the books and records of Senco and Maco upon which such an award would have to be based is in the exclusive possession of Senco (in the case against Senco, the arbitrator's finding that Maco is affiliated with Senco is valid). This circumstance points up the need, already noted in this memorandum, for a procedure to compel arbitration.[18]

 The court also will not enforce the monetary award, with respect to all its subdivisions, insofar as that award is based upon damages alleged to have been incurred subsequent to the date of expiration of the agreement (February 15, 1967). It is fundamental that an arbitrator's authority is limited by the terms of the agreement which grants him authority. It would be anomalous to say the least if an arbitrator under one agreement could say that a party to it is bound by the terms of another agreement. Such a conclusion would require explicit authorization in the first agreement, a factor which is lacking in the present case. Although the instant agreement sets out a pro-

cedure by which plaintiff or the Association can notify the other as to its desire not to renew the agreement (Article 68), no mention is made as to procedures by which a member of the Association may withdraw from it in order not to be bound by future agreements made by the Association. The arbitrator's award of damages for a period extending up to March 31, 1967 is clearly based upon his conclusion that Senco is bound by the terms of a succeeding agreement.[19] That conclusion in turn is based upon his conclusion under the *Retail Associates* case that Senco had not effectively withdrawn from the Association so as not to be bound by a later agreement.[20] This legal question is one which the arbitrator had no authority to decide.

 Similarly, the court will not enforce that portion of the award which declares Senco to be bound by the terms of the new agreement. However, the court will enforce all other aspects of the arbitrator's award. The monetary award with respect to fund contributions, dues, liquidated damages, and interest are all "appropriate remedies" (under Article 35(E)) for violations of specific provisions of the agreement, found by the arbitrator. The court rejects Senco's contention that the arbitrator's award with respect to "liquidated damages" is punitive in character and thus should not be enforced. The fact that Articles 29 and 30 are headed

18. Since the present action is one to enforce the arbitrator's award, the court will not enter an order compelling Senco to arbitrate the question of "lost wages." However, in view of the court's enforcement, infra, of the arbitrator's order granting plaintiff access to the records, the arbitrator may receive sufficient information from the plaintiff on which to base a final award and perhaps Senco may then decide to accept the arbitrator's standing invitation.

19. Because the court considers the award of damages for the period after the expiration date to be based upon the arbitrator's conclusion that Senco is bound by the new agreement, United Steelworkers of America v. Enterprise Wheel &

Car Corp., supra, does not control. The Court's approval in that case of an award covering back pay for a period subsequent to the expiration date of the agreement was based upon an ambiguity in the arbitrator's decision. 363 U.S. at 597–598, 80 S.Ct. 1358. There is no such ambiguity in the present case.

20. The court does not, because it need not, express any view as to the correctness of the arbitrator's conclusion. If plaintiff were attempting to enforce an arbitrator's award under a new agreement, then the court might have to confront this question. Cf. Zarich v. Local 62, ILGWU, Sup.Ct.N.Y., 1967, 54 CCH Lab. Cas. ¶ 11,676.

"Penalty for Working for Jobbers or Manufacturers Not Under ILGWU Contracts" is not determinative. Although it is true that the arbitrator did not set out specific facts supporting the $15,000 figure allocated to "liquidated damages," he was not required to do so. As the Supreme Court said in United Steelworkers of America v. Enterprise Wheel & Car Corp., supra at 598, 80 S.Ct. at 1361: "Arbitrators have no obligation to the court to give their reasons for an award." Moreover, there is at least some authority for an award of punitive damages under § 301. Sidney Wanzer & Sons, Inc. v. Milk Drivers Union, N.D.Ill., 1966, 249 F.Supp. 664; Note, 80 Harv.L.Rev. 903 (1967); but see Local 127, United Shoe Workers of America, A.F.L.-C.I.O. v. Brooks Shoe Manufacturing Co., 3 Cir., 1962, 298 F.2d 277.

The court will also enforce the arbitrator's order that Senco return the Maco shop to the location of the former Senco shop on Meridian Street, or, upon the observance of certain conditions that it retain the Maco shop in Revere. This is an appropriate remedy for the violation of Article 67 found by the arbitrator. Enforcement of this aspect of the award is not barred by the fact that this relief may anticipate that which would eventually emanate from N.L.R.B. proceedings which are presently underway. The enforcement of the award in the present case will not nullify those proceedings since they involve several issues that do not arise in the present case. In any event, it is clear from Smith v. Evening News Association, 1962, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, and Carey v. Westinghouse Electric Corp., 1964, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320, that the concurrent jurisdiction of the N.L.R.B. does not prevent the obtaining of relief under a collective bargaining agreement.

Finally, the court will enforce the arbitrator's orders granting plaintiff access to Senco's records (including those of Maco, the arbitrator having found validly as to Senco that Maco was its subsidiary, auxiliary or affiliate) since this is an appropriate remedy for Senco's violation of Article 7; and directing Senco to cease and desist from doing work for, or dealing with, jobbers not under contract with plaintiff since this is an appropriate remedy for Senco's violation of Article 8.

Accordingly, plaintiff's motion for summary judgment is allowed in part and denied in part. Correspondingly, Senco's motion for summary judgment is denied in part and allowed in part. Although final judgment will not be entered at this time, Rule 54(b), Fed.R. Civ.P., counsel for plaintiff and Senco are instructed to confer and submit for future use a proposed form or forms of judgment based upon this memorandum and consistent with the requirements of Fed.R.Civ.P. 65(d). See International Longshoremen's Assn., Local 1291 v. Philadelphia Marine Trade Assn., 1967, 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236.

## II Maco

The question of Maco's liabilities under the arbitrator's award does not require extensive discussion. The guiding principle is set out clearly in Livingston v. John Wiley & Sons, 1964, 376 U.S. 543, at 547, 84 S.Ct. 909, at 913, 11 L. Ed.2d 898:

Here, the question is whether Wiley, which did not itself sign the collective bargaining agreement on which the Union's claim to arbitration depends, is bound at all by the agreement's arbitration provision. The reason requiring the courts to determine the issue is the same in both situations. The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so a fortiori, it cannot be compelled to arbitrate if an arbitration clause does not bind it at all.

See also United States Gypsum Co. v. United Steelworkers of America, 5 Cir., 1967, 384 F.2d 38, cert. denied 389 U.S. 1042, 88 S.Ct. 783, 19 L.Ed.2d 832; Las Vegas L. J. Ex. Bd. of Cul. W. & B. v. Las Vegas Hacienda, Inc., 9 Cir., 1967, 383 F.2d 667, cert. denied 390 U.S. 958, 88 S.Ct. 1037, 19 L.Ed.2d 1153.

 Plaintiffs argument that Maco is bound by the arbitrator's award is a classic example of bootstrapping. Plaintiff relies heavily upon Article 69 of the agreement which gives the arbitrator authority to determine whether a firm or corporation is a subsidiary, auxiliary or affiliate of a signatory, in this case Senco. But the arbitrator's finding that Maco is such a firm or corporation is binding only on the parties to the contract. Certainly, two parties cannot by agreement arrange to bind a third party. Accordingly, until it should be determined by a court that Maco, by virtue of its relationship to Senco, is a party to the contract, the arbitrator's award does not bind Maco.[21] The arbitrator's finding that Maco is a subsidiary of Senco is binding only on Senco and not on Maco.

The case of Teamsters Local Unions, etc. v. Braswell Motor Freight Lines, 5 Cir., 1968, 392 F.2d 1, on which the plaintiff relies, is readily distinguishable. There the court held that the terms of a collective bargaining agreement were applicable to a corporation that had merged with the signatory. However, it is significant that the surviving corporation was the signatory so that there appears to have been no allegation, as there is in the present case, that two separate entities were involved.

 Finally, plaintiff has provided the court with a copy of a decision by a trial examiner of the N.L.R.B. in a case involving, among others, the parties to the present case. In that decision, the trial examiner found that Maco should be considered a single employer with Senco and was therefore bound by the agreement. But the decision of the trial examiner is no more binding upon this court than it is upon the N.L.R.B.

Maco's motion for summary judgment is supported by proof that it is a separate corporation from Senco and its controlling shareholder Bocchino has never owned any shares in Senco. In opposition, the plaintiff has rested upon the mere allegations of paragraph 7 of the complaint, clearly insufficient under Rule 56(e), Fed.R.Civ.P., and the arbitrator's findings that both companies are actually owned and operated by Senese and that Maco was established as part of a plan by Senco and Senese to avoid and evade the plaintiff and the agreement.

 Maco has not shown the absence of a genuine issue as to Maco's affiliation with Senco.[22] Stock ownership is but one facet of that issue. On the other hand the plaintiff's reliance on the arbitrator's findings has been misplaced, as herein explained. Neither party has furnished the court with sufficient factual data to enable it to rule upon the motion with finality.

Therefore both cross motions for summary judgment pertaining to the claim of the plaintiff against Maco are denied without prejudice.

---

**21.** This ruling is in no way inconsistent with the court's decision earlier in this opinion to enforce that part of the arbitrator's award which directs Senco to return the Maco shop to the location of the former Senco shop. This order is binding only on Senco. If Senco does not, or can not, carry out this order, it alone could be held in contempt unless, of course, Maco should in fact be a single employer with Senco. But in that case,

Maco would have no standing to complain that the court had in effect enforced the arbitrator's award against it.

**22.** It is not completely clear that resolution of this issue will be conclusive on the question of Maco's liability, i. e., sufficient to satisfy the test of substantial continuity of identity or lack of it framed in Livingston v. John Wiley & Sons, supra.