TEAMSTERS LOCAL UNION NO. 533, AFFILIATED WITH the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Plaintiff,

v.

HERBERT FUEL OIL & TRUCKING CO., Defendant.

No. 80 Civ. 2265.

United States District Court,
E. D. New York.

July 14, 1982.

Cohen, Weiss & Simon, New York City, for plaintiff.

Aurnou, Bobrow, Greenapple, Kurzman & Midler, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This action was commenced by Teamsters Local Union No. 553 ("the Union"), for the purpose of enforcing a labor arbitration award issued on November 19, 1979. The arbitration was initiated by the Union pursuant to a collective bargaining agreement allegedly in effect between the parties. The Union contended that the defendant, Herbert Fuel Oil & Trucking Co. ("Herbert Fuel"), had violated the agreement by shifting much of its work to a newly formed corporation, Herbert Petroleum Transport, Inc. ("Herbert Petroleum"), which corporation did not abide by the terms of the collective bargaining agreement. The Union alleged that the new corporation was a sham created by the defendant for the purpose of avoiding its obligations under the agreement.

The defendant did not object to arbitration and submitted three issues to the arbitrator. First, the employer argued that Herbert Fuel had never signed the agreement for the period in question—1976–1978. Second, the employer argued that by ignoring the agreement for many years, the Union had waived its rights. Third, the employer argued that it had not violated the agreement because the new company was a separate entity not subject to the agreement's provisions.

As to these allegations, the arbitrator, Professor Lewis Kaden, after a full hearing determined (1) that the employer had signed the collective bargaining agreement for the 1976–1978 term, (2) that the union had not waived its rights under this contract, and (3) that the newly formed corporation was so closely related to the defendant partnership that the employees of this corporation were covered by the provisions of the agreement. The arbitrator went on to determine that the defendant had breached the collective bargaining agreement by failing to provide these employees with all of the benefits provided for in the contract. Although the arbitrator observed that a full hearing regarding the specific benefits denied these employees had not been held at the arbitration, he ordered the defendant to "make whole all drivers employed during the contract term for all benefits provided in the contract." The arbitrator also ordered the defendant to notify the union within two weeks of all persons employed during the 1976–1978 contract term.

The defendant subsequently submitted the required list of employees to the plaintiff, but failed to abide by the other terms of the award. Consequently, the plaintiff filed this suit for confirmation and enforcement pursuant to Section 301 of the Labor Management Relations Act. The complaint seeks a judgment against the defendant in an amount sufficient to make whole all employees covered by the award, demands that the defendant make available to the plaintiff records and documents necessary

to determine the amount of the award, and finally seeks attorneys' fees. The plaintiff now moves for summary judgment on all of the relief requested in the complaint.

## Discussion

At the outset it should be noted that there is a strong federal policy in favor of settling labor disputes through arbitration. *See, e.g., Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1402 (1960); *United Steelworkers of America v. Warrior & Gulf. Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). In furtherance of this policy, the Supreme Court has promulgated a deferential approach to judicial review of an arbitrator's award, cautioning that "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Therefore, under existing law, the courts may not review the merits of an arbitrator's award, but rather must enforce the award unless it fails to "draw[ ] its essence from the collective bargaining agreement," *id.* at 597, 80 S.Ct. at 1361, or fits into some other narrow exception to the principal of deference to arbitration, such as fraud, action in excess of the arbitrator's powers or complete disregard of the law, *Local 771, I. A. T. S. E. v. RKO General, Inc.*, 546 F.2d 1107, 1113 (2d Cir. 1977).

It is against this background that the plaintiff's action to enforce the arbitrator's award, and the defendant's attempts to resist such enforcement, must be viewed. Both sides concede that an arbitral award was rendered pursuant to a collective bargaining agreement, and that the defendant has failed to abide by that award. Unless the defendant can support its claim that a ground for denial of enforcement exists, or at least demonstrate that a genuine issue as to a material fact must be resolved before it can be determined if the award should be enforced, under the preceding authorities it is clear that the plaintiff would be entitled to judgment as a matter of law. Thus, summary judgment in plaintiff's favor would be appropriate pursuant to Fed.R. Civ.P. 56(c).

The defendant raises five arguments as to why enforcement should be denied. These will be treated seriatim.

## I.

The defendants first ground for denying enforcement contains two components, both relating to the validity of the underlying agreement. First, the defendant once again asserts that it was not a signatory to the collective bargaining agreement during the time period in question. The basis of this aspect of the defendant's argument is that the plaintiff is in possession only of an undated signature page containing the signature of one of the defendant's principals, Anthony Guidice. The affidavit of Mr. Guidice recites that he does not remember whether he signed this page in 1976, or whether it is a signature page from an earlier contract. This same argument was made to and rejected by the arbitrator.

The threshold legal question posed by this argument is whether the decision of the arbitrator must be accepted by this Court, or, in the alternative, whether a *de novo* determination is now appropriate. Unlike the typical labor arbitration case wherein the decision of the arbitrator will be accepted "so long as it draws its essence from the collective bargaining agreement," *U. S. Steelworkers v. Enterprise Wheel Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), the interesting question posed here is whether the arbitrator was empowered to determine the issue of the existence of the very contract from which his authority was initially derived.

In arguing that the arbitrator lacked this authority, the defendant relies primarily on *ILGWU v. Ashland Industries, Inc.*, 488 F.2d 641 (5th Cir.), *cert. denied*, 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68 (1974). In *Ashland*, a union brought suit against an employer for breach of a collective bargaining agreement. The employer successfully stayed the suit, arguing that arbitration was the sole remedy provided for under the contract. When the employer reached arbitration, however, it argued that the entire contract was invalid because it had been induced by fraud. The arbitrator agreed and held the contract unenforceable. The union then moved to vacate the award on the theory that the arbitrator had exceeded his authority, and the district court granted the union's motion. The Fifth Circuit affirmed this decision, concluding:

> It is our view that [the employer's] attack upon the validity of the underlying contract goes to the heart of whether there is *anything* to arbitrate—not just *what* there is to arbitrate—and thus poses a legal question for the Court rather than the arbitrator. The arbitrator who derives his power solely from the contract cannot hold that charter to be legally ineffective.

*Id.* at 644 (emphasis in original).

The plaintiff argues both that *Ashland* is inapplicable and that it was erroneously decided. Because this Court agrees that *Ashland* is distinguishable, it does not find it necessary to reach this latter argument.[1]

■ Although the Court in *Ashland* held that the question of the validity of the underlying contract should have been determined by the Court rather than the arbitrator, *Ashland* involved a case wherein arbitration was court compelled in the first instance. Thus, in *Ashland*, the union challenging the arbitrator's decision had not voluntarily consented to arbitration. Here, the Court is faced not with a defendant who was compelled to arbitrate, but rather with a defendant who voluntarily submitted the issue of the validity of the underlying agreement to arbitration. As the following authorities indicate, through such conduct the employer surrendered his right to assert that the arbitrator lacked authority to determine the validity of the collective bargaining agreement.

Supportive of this conclusion is *Piggly Wiggly Operators Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union*, 611 F.2d 580 (5th Cir. 1980). In *Piggly Wiggly*, the parties to a collective bargaining agreement submitted to arbitration an issue that was arguably not within the scope of the agreement's arbitration provisions. After the arbitrator had rendered a decision against the employer, the employer sought to resist enforcement of the award by arguing that the arbitrator had exceeded his authority. The Fifth Circuit rejected this argument, however, observing that the scope of an arbitrator's authority is not always controlled by the collective bargaining agreement alone. The Court determined that since the parties had agreed to submit the issue to arbitration, the losing party could not later complain that the arbitrator lacked the power to decide the dispute. The Court stated:

> "[O]nce the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbitrator, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority.

> \* \* \* \* \* \*

> In this case, neither party questioned the arbitrability either of the disputes stated in the grievance or of the issues set forth in it; the entire grievance was presented to the arbitrator without reservation. It

---

1. The plaintiff's argument questioning the validity of *Ashland* raises troublesome questions involving the potential conflict between *Ashland* and a line of cases premised on *Prima Paint Corp. v. Flood Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). In *Prima Paint*, the Supreme Court held that arbitration could be compelled pursuant to a collective bargaining agreement even in the face of a claim of fraud in the inducement of the contract, so long as the claim of fraud did not relate directly to the validity of the arbitration clause itself.

was only after he had decided ... adversely to the employer that it sought to raise the question of his jurisdiction. In *International Brotherhood of Teamsters v. Washington Employers, Inc.*, 9 Cir. 1977, 557 F.2d 1345, 1350, the court found in similar circumstances that, by submitting an issue to arbitration, the employer had waived any objection to the arbitrator's jurisdiction. Whether in technical legal terms the surrender of the possible argument that a certain dispute is not covered by the promise to arbitrate should be considered a waiver is not of present moment. *On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute.*

*Id.* at 584 (emphasis added).

The Second Circuit previously followed a similar approach in *Metal Product Workers Union v. Torrington Co.*, 358 F.2d 103 (2d Cir. 1966). In *Torrington*, a union and employer agreed to arbitrate the issue of the arbitrability of a dispute arising under a collective bargaining agreement. After the issue was decided against the union, the union brought suit to vacate the award arguing that the arbitrator lacked authority to decide arbitrability. The Second Circuit concluded that while the question of arbitrability was ordinarily decided by the courts, the parties could agree to submit the issue to arbitration. The court observed:

> We find no ground for reversing the decision of the arbitrator. The parties voluntarily and by express agreement submitted to him the very issue which he had decided, the issue of arbitrability. The Union is unhappy with the award because the arbitrator failed to find in its favor. It wants an opportunity to present its case again to another tribunal. We can perceive no reason for giving it this second opportunity, since there is no basis for finding error either in the arbitrator's conclusions or in the procedure by which he reached those conclusions.

*Id.* at 106. *See also Ficek v. Southern Pacific Company*, 338 F.2d 655, 657 (9th Cir. 1964), *cert. denied*, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965) ("A claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act"); *Jarrell v. Wilson Warehouse Co. Inc.*, 490 F.Supp. 412 (M.D.La.1980).

On the basis of the reasoning set forth in these authorities, this Court concludes that the defendant employer is now foreclosed from relitigating the question of whether it was a signatory to the collective bargaining agreement.

The second aspect of the defendant's attack on the validity of the underlying contract is that the agreement itself is unlawful as violative of the National Labor Relations Act ("NLRA"). The defendant argues that in 1970, when the contract was entered into, Herbert Fuel Oil had no eligible union members, as it was comprised of two partners only. The defendant asserts that it signed the master agreement solely because the union informed it that the partnership's trucks could not enter a union terminal without a union card. The defendant argues that this was a violation of Section 8(b)(4)(i)(A) of the NLRA which makes it an unfair labor practice "to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is ... forcing or requiring an employer or self-employed person to join any labor or employer organization."

Even assuming that the defendant is correct that the absence of non-principal employees would be sufficient as a matter of law to render the entire contract unenforceable, a conclusion this Court is by no means endorsing, the defendant's argument is still without merit in the instant case. This is because the defendant is relying on a state of facts that existed over ten years ago. The list of employees provided by Herbert Fuel concedes that during the contract period in question—1976–1978—it had at least four employees who were not prin-

cipals or their family. Thus, the defendant's reliance on the lack of employees in 1970 is misplaced. Further, to the extent that the defendant is raising a claim of duress, such defense has been waived by delaying over ten years in raising the claim while at the same time signing renewal contracts and making at least some dues and pension and welfare contributions to the union pursuant to the agreement. *See Boyle v. North Atlantic Coal Corp.*, 331 F.Supp. 1107 (W.D.Pa.1971). Thus, the defendant's contention that the underlying agreement is invalid does not provide a basis for denying enforcement of the award.

## II.

The defendant's second ground for denying enforcement is that the arbitrator exceeded his authority in that he sought to bind Herbert Petroleum, a non-signatory to the contract, by his award. The defendant relies in this regard on *Joint Board of Cloak, Skirt & Dressmakers Union v. Senco*, 289 F.Supp. 513 (D.Mass.1968).

In *Senco*, the signatory to a collective bargaining agreement, Senco, Inc., transferred personnel, machinery and equipment to a second entity, Maco Clothing Corp. Subsequently, the union initiated arbitration proceedings alleging various grievances against both Senco and Maco. The arbitrator determined that Maco was a subsidiary of Senco, and thus was bound by the collective bargaining agreement which by its own terms encompassed "subsidiary, auxiliary or affiliated firms or corporations." Upon the union's suit to enforce the arbitrator's award, the district court determined that

the arbitrator was powerless to bind Maco, since Maco was not a signatory to the agreement under which the arbitrator had derived his sole authority.

This Court does not find the reasoning embodied in the *Senco* decision to be applicable here. Although the *Senco* decision would appear to support the result urged by the defendant, it is critical to note that despite the Senco Court's holding that the arbitrator could not bind Maco, it nonetheless enforced that portion of the arbitrator's award that required Senco to return the Maco shop to the location of the former Senco shop. The court in *Senco* justified this seeming inconsistency by observing: "This order is binding only on Senco. If Senco does not, or can not, carry out this order, it alone could be held in contempt." *Id.* at 527 n.21.

■ Just as the arbitrator's award in *Senco* was construed as binding only the signatory, Senco, so the award here binds only the signatory, Herbert Fuel. Although the enforcement of the award involves conduct on the part of Herbert Fuel that will affect the employees of Herbert Petroleum, only Herbert Fuel has been named as a defendant in this action, and only it will be liable for non-compliance with the arbitrator's decision. Thus, the defendant's claim that the arbitrator exceeded his authority in this regard is without merit. *See also La Casa Painting Inc. v. Orange Belt District Council of Painters No. 48*, 106 L.R.R.M. 2830 (C.D.Col.1979).[2]

## III.

The defendant's third ground for denying enforcement of the arbitrator's award is

---

2. *Orion Shipping & Trading Co. v. Eastern States Petroleum Corporation of Panama*, 312 F.2d 299 (2d Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963), also relied on by defendant, does not dictate a contrary result. In *Orion*, the Second Circuit held that an arbitrator had exceeded his authority in attempting to bind a party who had not participated in the arbitration proceedings and was not a signatory to the agreement upon which the arbitrator's authority was derived. This result is entirely consistent with the foregoing discussion, in that no non-signatory party is being bound here.

Further, to the extent that the defendant seeks to relitigate the soundness of the arbitrator's decision regarding the status of the employees of Herbert Petroleum, it is clear that the decision of the arbitrator must be upheld so long as it "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). As the arbitrator's conclusion in this regard was based upon his careful analysis of the language of the contract, the Court finds this standard to have been met.

that the award itself is violative of national labor policy. The defendant's argument in this regard essentially is that by forcing the defendant to pay union benefits for employees of Herbert Petroleum, these employees are being coerced in their choice of a bargaining representative. The defendant asserts that such action on the part of the employer would be an unfair labor practice under Section 8(a)(1) of the NLRA, which provides that "[i]t shall be an unfair labor practice for an employer ... to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7."

■ The defendant's argument in this regard is unpersuasive. This is not a case such as *Glendale Manufacturing Co. v. Local 520, ILGWU*, 283 F.2d 936 (4th Cir. 1960), *cert. denied*, 366 U.S. 950, 81 S.Ct. 1902, 6 L.Ed.2d 1243 (1961), relied upon by the defendant, in which an employer attempted to bind to a collective bargaining agreement employees of a newly created separate entity. Rather, in the instant case, the arbitrator determined that the employees of Herbert Petroleum were in effect employees of Herbert Fuel. It is on the basis of this finding that the arbitrator ordered Herbert Fuel to "make whole" all such employees. The defendant has pointed to no authority indicating that such action on the part of the defendant will constitute an unfair labor practice as to those employees receiving these benefits. To the contrary, the award of the arbitrator would appear to be supported by *NLRB v. Lewis*, 246 F.2d 886 (9th Cir. 1957).

In *Lewis*, a partnership that manufactured and sold shoes gradually transferred the manufacturing portion of its business to a corporation at a different location. Although the partnership had a union shop contract with the union representing the manufacturing employees, the union contract was not given effect as to the employees of the corporation. The Ninth Circuit enforced an order of the National Labor Relations Board finding that the corporation was merely a front for the partnership and ordering reinstatement of certain employees of the corporation. The Board had sustained the partnership's liability for unfair labor practices committed by it in, *inter alia*, refusing to apply the labor agreement in force at the partnership manufacturing facility.

Just as no unfair labor practice was perceived by the Ninth Circuit to have been ordered by the Board's action in *Lewis*, so this Court finds no unfair labor practice to be mandated by the arbitrator's decision here. Thus, the defendant's third argument does not provide a basis for denying enforcement.

## IV.

The defendant's fourth ground for attacking the arbitrator's award is that it is ambiguous. The defendant argues that it is not clear which drivers it must "make whole" as a result of the arbitrator's decision, and how to calculate the amounts owed under the contract once the drivers are identified.

■ An arbitrator's award will not be enforced if it is ambiguous. *United Mine Workers v. Consolidation Coal Co.*, 666 F.2d 806 (3rd Cir. 1981); *Bell Aerospace Co. Division of Textron, Inc. v. Local 516, International Union, UAW*, 500 F.2d 921, 923 (2d Cir. 1974). The arbitrator's award here, however, while not a model of clarity, is sufficiently capable of calculation.

The employer has supplied a list of employees during the contract term in question. The union does not challenge the accuracy of this list. The arbitrator's award is clear in covering all of the drivers employed by Herbert Fuel and Herbert Petroleum. Contrary to the defendant's assertions, this would include the defendant's principals and their sons, provided they were performing work covered by the agreement, i.e., driving a fuel oil delivery truck. That the arbitrator's award orders the defendant to make payments to the union as well as to employees directly, once again contrary to the defendant's assertions, is clearly indicated by the arbitrator's observation that the defendant apparently

had failed to comply with sections 38 to 54 of the agreement. *See* Arbitrator's Award at p. 8. These sections obligate the defendant to make contributions to union funds as well as to employees directly. *See, e.g.,* Sections 47 and 54.

Thus, all that need be done to implement the arbitrator's award is for the union and the employer to calculate what payments the contract obligated the employer to make to or on behalf of all of those designated on the list of employees provided by the employer. This is a matter of simple arithmetic not requiring the additional services of the arbitrator.

### V.

The final ground urged by the defendant is that the arbitrator's award should not be enforced because there is a pending state court proceeding involving the same issues. This pending action was brought against the defendant by the Trustees of the Local 533 Pension, Hospitalization and Optical Trust Fund. Once again, the argument of the defendant is unpersuasive.

The defendant concedes in its memorandum that an application to stay proceedings pending state court resolution is one addressed to the discretion of the court. *See Milk Drivers and Dairy Employees Union Local No. 338 v. Dairymen's League Cooperative Assn., Inc.,* 304 F.2d 913 (2d Cir. 1962); *Universal Gypsum of Georgia, Inc. v. American Cyanamid Co.,* 390 F.Supp. 824 (S.D.N.Y.1975). A stay may be granted if the court finds it is in the interest of judicial economy. *Id.*

Although the defendant has demonstrated that the court has discretionary authority to stay this suit, it has not given any reasons as to why this discretion should be exercised in the instant case. Further,

since the plaintiff in the state court proceeding is a separate entity from the plaintiff here, it is not clear that the issues in the two suits are co-extensive. Since the defendant has failed to provide any basis upon which a stay should be granted, its argument in this regard is without merit.

### Conclusion

On the basis of the foregoing discussion, this Court concludes that there is no genuine issue as to a material fact and that the plaintiff is entitled to judgment as a matter of law. Summary judgment therefore is granted in plaintiff's favor pursuant to Fed. R.Civ.P. 56(c). The defendant is directed to comply with the arbitrator's award and to provide the plaintiff with such information as is necessary to calculate all payments required to have been made under the contract on behalf of all employees contained on the list already supplied by the defendant.[3]

SO ORDERED.

---

**3.** One final point that must be addressed is the plaintiff's request for attorneys' fees. While such fees may be granted when a challenge to an arbitrator's decision is without justification, *International Assn. of Machinists v. Texas Steel Co.,* 538 F.2d 1116, 1121–22 (5th Cir. 1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977), such an award in the in-

stant case does not seem warranted. While this Court has concluded that the defendant's arguments were without sufficient merit to prevail, it cannot be said that these arguments were without any justification. Since the defendant had some basis for raising the grounds alleged, the plaintiff's request for attorneys' fees is denied.