**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 323, a labor organization, Plaintiff,**

v.

**CORAL ELECTRIC CORPORATION, a Florida corporation, and Beach Electric Corporation, a Florida corporation, Defendants.**

No. 82–8459–CIV–JAG.

United States District Court, S.D. Florida, N.D.

Dec. 13, 1983.

On Motion for Reconsideration Jan. 10, 1984.

Robert Sugarman, Kaplan, Sicking, Hessen, Sugarman, Rosenthal & DeCastro, Miami, Fla., for plaintiff.

Brown Boswell, Paul Platte, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for defendants.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon the Plaintiff's motion for summary judgment. Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185(a) (1978),[1] and the Federal Arbitration Act, 9 U.S.C.A. § 9 (1970),[2] confer jurisdiction upon the Court to entertain this matter. The Court has considered the pleadings and all other information presented, and concludes that the motion for summary judgment be denied. The

---

1. 29 U.S.C.A. § 185(a) provides:

 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

2. 9 U.S.C.A. § 9 provides in pertinent part:

 If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

Court does find, however, that there is no substantial controversy as to a number of issues presented in the Plaintiff's motion. These issues, and the underlying factual dispute, are discussed in the Court's decision below.

## I. Background

 In May 1980, Wayne Stewart approached George Hudspeth, Jr., the business manager of the International Brotherhood of Electrical Workers (IBEW),[3] about starting a construction business and signing a prehire contract.[4] This discussion proved fruitful and, according to records filed with the Secretary of State, Coral Electric Corporation was incorporated on June 5, 1980. Wayne Stewart's wife, Sally Stewart, signed the incorporation papers, which listed the new company's address as 2425 Circle Drive, West Palm Beach. The incorporation papers also listed attorney Michael Jackson as the legal representative of Coral Electric Corporation. On January 28, 1981, the IBEW and Coral Electric Corporation agreed upon and entered into a prehire agreement. Defendants' Supplemental Memorandum of Law and Affidavit in Opposition to Motion for Summary Judgment, Affidavit of Wayne Stewart ¶ 3 (filed Nov. 10, 1983).

Almost four months to the day after entering into the collective bargaining agreement, on May 26, 1983, records in the Secretary of State's office indicate that Wayne Stewart signed papers to incorporate another construction company, Beach Electric Corporation. As alleged in the pleadings submitted, there are several similarities between Coral Electric Corporation and Beach Electric Corporation. The address, legal counsel, and business practices both appear to be identical. Additionally, sometime shortly before March 3, 1982, Wayne Stewart filed an application for Certificates of Competency to qualify Coral Electric Corporation and Beach Electric Corporation for construction jobs; both companies operated under the same contractor's license number.

Pursuant to the terms of the prehire agreement,[5] the IBEW filed a grievance

---

3. The IBEW "is a labor organization representing employees in the building and construction industry ...." Complaint ¶ 2 (filed Oct. 21, 1982).

4. The genesis of the prehire contract is section 8(f) of the National Labor Relations Act, 29 U.S.C.A. § 158(f) (1973). Section 8(f) "allows construction industry employers and unions to enter into agreements setting the terms and conditions of employment for the workers hired by the signatory employer without the union's majority status first having been established in [a representation election] ... under § 9 of the Act." *Jim McNeff, Inc. v. Todd,* — U.S. —, 103 S.Ct. 1753, 1756, 75 L.Ed.2d 830 (1983); *see NLRB v. Haberman Construction Co.,* 641 F.2d 351, 365 (5th Cir.1981). Congress intended for the prehire contract

> to meet specific problems which had arisen in the construction industry under the prior law because of the transitory nature of the employer-employee relationship in that industry .... [P]rehire agreements which would otherwise be invalid were authorized in the construction industry because of the dual necessities (1) that construction bidders know in advance of bid what their labor costs would be, and (2) that construction employers have access to an available pool of skilled craftsmen for quick reference.

*Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.,* 690 F.2d 489, 522 (5th Cir.1982) (quoting *NLRB v. Irvin,* 475 F.2d 1265, 1267 (3d Cir.1973)). A prehire contract matures into a collective bargaining agreement once the union establishes majority status. *NLRB v. Local Union 103, International Assocation of Bridge Workers (Higdon Construction Co.),* 434 U.S. 335, 341, 98 S.Ct. 651, 655, 54 L.Ed.2d 586 (1978); *Baton Rouge Building and Construction Trades Council v. E.C. Schafer Construction Co.,* 657 F.2d 806, 809 (5th Cir.1981). Majority status may be established by a valid bargaining representative election called by either the employer or the union. *Higdon Construction Co.,* 434 U.S. at 345, 98 S.Ct. at 657; 29 U.S.C.A. § 158(f) (1973). The "prehire agreement is subject to repudiation until the union establishes majority status," *Jim McNeff, Inc.,* 103 S.Ct. at 1759, but is enforceable in a section 301 suit absent the union's showing of majority support provided that first, the union or the employer has not repudiated the contract; and second, enforcement of the agreement will not threaten the employee's section 7 rights by implicitly granting the union majority status before an actual showing of majority support. *Id.* at 1758–59.

5. Article 1, Section 1.10, reads:

> There shall be a Labor-Management Committee of three (3) members plus two (2)

against Coral Electric Corporation, charging that Coral Electric Corporation and Beach Electric Corporation constituted a single employer, and that Coral Electric Corporation had violated its agreement with the union by subcontracting out work to Beach Electric Corporation that was to be performed by union employees at Coral Electric Corporation.[6]

On March 1, 1982, the Joint Labor-Management Committee (Arbitration Committee, Committee, or Arbitrator) convened to resolve the grievance. After the IBEW had presented its case that day, Coral Electric Corporation requested, and was granted, additional time to prepare a defense. When the Committee reconvened on March 4, Coral Electric Corporation chose not to present any direct evidence or witnesses on its behalf. Based upon the evidence and testimony presented by the parties at the hearings, the Arbitrator found "that Coral Electric and Beach Electric constitute a single employer under the collective bargaining agreement, and that Coral Electric has violated the agreement by managing and/or owning Beach Electric for the purpose of performing non-union work within the Union's jurisdiction." Motion for Summary Judgment, Exhibit B "Decision and Award" at 2 (filed Aug. 29, 1983). The

Committee also found that both employers were bound to all the terms and conditions of the prehire agreement. Accordingly, the Committee ordered Coral Electric Corporation *and* Beach Electric Corporation to pay all fringe benefits and wages due and owing under the collective bargaining agreement. To insure that the companies complied with the award, the Arbitration Committee also ordered an accounting.

On November 2, 1982, the defendants Coral Electric Corporation and Beach Electric Corporation received copies of the Committee's award, along with a complaint filed by the IBEW to confirm and enforce the Arbitration Committee's decision. On December 10, 1982, the defendants filed their answer along with affirmative defenses. After a considerable delay, the IBEW filed a motion for summary judgment, which has prompted the Court's review.

II. *Statute of Limitations*

The IBEW contends that federal and state statutes of limitation bar the defendants from raising defenses to the enforcement of the arbitration award. Under federal law, a party has ninety (90) days from entry of an arbitrator's decision to move to "vacate, modify, or correct" the order. 9

---

alternates representing the Union, and three (3) members plus two (2) alternates representing the Chapter. It shall meet regularly at such stated times as it may decide. However, it shall also meet within forty-eight (48) hours when notice is given by either party. It shall select its own chairman and secretary. Article 1, Section 1.11, provides: "All grievances or questions in dispute shall be adjusted by the duly authorized representatives of each of the parties to this agreement."

6. The IBEW contended that Coral Electric Corporation violated the collective bargaining agreement by establishing and subletting out work to Beach Electric Corporation, failing to use union laborers, and not paying wages and fringe benefits as required by the contract. These charges, if true, constitute violations of sections 2.01 and 2.09 of Article II, and section 3.02 of Article III of the prehire contract.
Article II, Section 2.01 provides:
No member of the International Brotherhood of Electrical Workers, or other employees, subject to employment by employers operating under this agreement, shall himself become an employer for the performance of

any electrical work. Any member, or other employee, possessing a masters license while employed under the terms of this agreement, shall maintain same on an inactive status. Any employer working under this agreement shall not take out a permit or master a job for any other person or firm, except in the case of a true joint venture.
Article II, Section 2.09, provides:
The subletting, assigning or transfer by an individual employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its local unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other local union to be performed at the site of the construction, alteration, painting, or repair of a building, structure or other work, will be deemed a breach of this agreement.
Article II, Section 3.02, provides: "The union shall be the sole and exclusive referral of applicants for employment."

U.S.C.A. § 12 (1970).[7] Florida law contains the same time requirements. Fla.Stat. § 682.13(2) (West Supp.1983).[8] Plaintiff reasons that the Court must strike the employers' affirmative defenses because more than ninety days has elapsed since delivery of the Arbitrator's decision and the defendants still have not filed a motion to vacate the order.

The defendants counter that their affirmative defenses are tantamount to a motion to vacate and, because these pleadings were filed within ninety days after service of the Arbitrator's decision, they do not violate either federal or state time requirements. After considering the relevant law, the Court finds itself in substantial agreement with the defendants' position.

Admittedly, there is a large body of case law supporting the proposition that a motion to vacate an arbitration award cannot be entertained by a federal court once the statutory time limit has elapsed. *See Teamsters Local 135 v. Jefferson Trucking*, 628 F.2d 1023 (7th Cir.1980); *Carpenters v. Meddles*, 535 F.Supp. 775 (N.D.Cal. 1981); *Auto Workers v. LaCross Cooler Co.*, 406 F.Supp. 1213 (W.Wis.1976). None of these cases address a situation where, as here, defenses to a motion to confirm were filed within the statutory period. The few decisions that are on point appear to treat affirmative defenses to an arbitration award as analogous to a motion to vacate provided they contain allegations which would sustain such a motion.

For example, in *Kest v. Nathanson*, 184 So.2d 690 (Fla. 4th DCA 1966), the parties had agreed to, and had engaged in, an arbitration proceeding. Nathanson, a contractor, refused to be bound by the arbitration award and instituted an action against the purchaser, Kest, for breach of contract within ninety days after delivery of the arbitrator's decision. The appellate court found that Nathanson's complaint and accompanying affidavit "contained statements which, if true, might be sufficient to deny confirmation of the [arbitrator's] award ...." *Id.* at 691. Therefore, the court ordered the trial court to consider Nathanson's complaint and affidavit as an application to vacate the arbitration award and to proceed to determine the substantive legal issues raised.

Decisions in both *Haskell v. Forest Land and Timber Co. (FL & T)*, 408 So.2d 811 (Fla. 4th DCA 1982) and *Lopez and Rogue Tile Co., Inc. v. Clearwater Development Corp.*, 291 So.2d 126 Fla. 2d DCA 1974) suggest a result similar to *Kest*. In *Haskell*, an arbitrator found that FL & T had damaged Haskell's property and compensation was due. Dissatisfied with the amount of damages awarded, FL & T filed a tort action against Haskell eight days later. Approximately three weeks after FL & T filed its complaint, Haskell answered asserting the arbitration as an affirmative defense. Some two years later, FL & T filed an amended complaint, alleging that the arbitrator showed "evident partiality" and asked that the award be vacated. The trial and appellate courts agreed that FL & T could not overturn the arbitration award with its tort action. The court of appeals noted that although FL & T had filed its complaint within ninety days of the arbitrator's decision, it could not substitute for a motion to vacate because it lacked sufficient allegations challenging the legality of the arbitration or the award. *Haskell*, 408 So.2d at 811–12.

Similarly, in *Clearwater Development Corp.*, the losing party in an arbitration proceeding sought to circumvent the adverse ruling by filing a breach of contract action within ninety days of the arbitrator's decision. The court held that the contract

---

7. 9 U.S.C.A. § 12, provides in pertinent part: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."

8. Section 682.13(2) reads:

An application under this section shall be made within ninety days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud, or other undue means, it shall be made within ninety days after such grounds are known or should have been known.

action could not be construed as a motion to vacate under Fla.Stat. § 682.13 because the complaint made no mention of the arbitration award. Significantly, the *Clearwater Development Corp.* court alluded with favor to the complaint and affidavit in *Kest* as an example of timely filed pleadings that could substitute for a motion to vacate an arbitration award.

■ Upon review of the decisions in *Kest, Haskell,* and *Clearwater Development Corp.,* the Court concludes that the defendants' affirmative defenses are not time barred because they were timely filed, and because they challenge the arbitration award on legal grounds. Specifically, the Court finds that affirmative defenses that challenge the authority of an arbitrator to entertain a grievance, and take exception to the arbitrator's legal conclusions, may substitute for a motion to vacate if filed within ninety days after delivery of the arbitrator's decision.

The result reached here is consistent with federal labor policy, which promotes the arbitral process and generally gives arbitration decisions finality. *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (cited as the *Steelworkers Triology* ). Moreover, this conclusion recognizes that a court should not elevate form over substance in reviewing the pleadings of a case. After all, "[p]leadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end." 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 8.34, at 8-299 (2d ed. 1983).

### III. *Waiver*

The IBEW next argues that the employers' failure to raise any defenses before the Arbitration Committee precludes their raising any defenses before this Court. Rath-

er than directly refute the cases and reasoning supporting the plaintiff's position, the defendants contest the legality of the underlying prehire agreement, arguing either that they repudiated the contract, or that it cannot be enforced until the IBEW demonstrates majority support. The Court finds that the plaintiff's position is substantially correct, but that judicial review of some of the defendants' defenses is required as a matter of law.

■ The waiver doctrine recognizes that an adverse party who fails to raise substantive defenses before an arbitrator waives the right to argue those defenses before a reviewing court. The doctrine is based upon the well-founded view that if a party could circumvent arbitration by awaiting an adverse award before asserting objections on grounds which he had knowledge of prior to the award, then the arbitration clause would be meaningless. *See United Steelworkers v. Smoke-Craft, Inc.,* 652 F.2d 1356, 1360 (9th Cir.1981) ("Because [employer] failed to raise before the arbitrator both the question of the propriety of the [union's] individual representation of the aggrieved employees and the question of whether a settlement had been reached, we cannot countenance these claims on appeal."); *Cook Industries, Inc. v. C. Itoh & Co.,* 449 F.2d 106, 107–08 (2d Cir.1971), *cert. denied,* 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972) (party "cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain" that the arbitrators were partial.); *Graphic Arts International Union v. Haddon Craftsmen, Inc.,* 489 F.Supp. 1088, 1093 (M.D.Pa.1979) (union cannot claim arbitrator bias for first time before district court); *cf. Brotherhood of Railway, Airline, and Steamship Clerks v. St. Louis Southwestern Railway Co.,* 676 F.2d 132, 137 (5th Cir.1982) (railroad waived any complaints concerning Public Law Board's failure to notify carmen by failing to raise issue before Board); *United Steelworkers v. Union Railroad Co.,* 648 F.2d 905, 913 (3d Cir.1981) ("When

the reasons supporting an objection are known beforehand, a party may not wait to make an objection to the qualifications of a Board member until after an unfavorable award has been made.").

An untimely challenge to an arbitrator's decision runs counter to the federal labor policy favoring the expeditious disposition of arbitrable claims, *Mogge v. District 8, International Association of Machinists*, 454 F.2d 510, 513 (7th Cir.1971), and "penalize[s] the beneficiary of the [arbitrator's] award because of the lapse of time over which he had no possible control." *Lodge No. 725, International Association of Machinists v. Mooney Aircraft, Inc.*, 410 F.2d 681, 683 (5th Cir.1969); *see Smoke-Craft*, 652 F.2d at 1360; *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local 1*, 611 F.2d 580, 584 (5th Cir.1980).

For example, in *Lodge No. 725, International Association of Machinists v. Mooney Aircraft, Inc.*, 410 F.2d 681 (5th Cir. 1969), the employer waited until after an adverse arbitration award to challenge the decision as unenforceable because it was not rendered within three days after the hearing on the grievance as the collective bargaining agreement directed. Although the arbitrator's decision was rendered forty-one days late, the Fifth Circuit held that the employer had waived its right to challenge either the enforceability of the award or the arbitrator's jurisdiction to proceed to a final determination of the issues before him, because it waited until after the decision had been entered. *Id.* at 683.

It is undisputed that the company did not challenge the jurisdiction of the arbitrator to proceed to a final determination of the issues before him at any time after the expiration of the three-day period and before the issuing of the decision adverse to the company. ... We conclude that such a failure to challenge the jurisdiction of the arbitrator until after the adverse decision was entered

amounted, as a matter or law, to a waiver.

*Id.* at 683–84 n. 4.

The Fifth Circuit reached a similar result in *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local 1*, 611 F.2d 580 (5th Cir.1980). There the employer challenged the arbitrability of the dispute and the arbitrator's jurisdiction only after receiving an adverse decision. Relying on the Ninth Circuit's decision in *International Brotherhood of Teamsters v. Washington Employers, Inc.*, 557 F.2d 1345, 1350 (9th Cir.1977), the court held that "by submitting an issue to arbitration, the employer had waived any objection to the arbitrator's decision." 611 F.2d at 584; *see also Mogge v. District 8, International Association of Machinists*, 454 F.2d 510, 512–13 (7th Cir.1971) (after arbitrator ordered reinstatement of employee, employer unsuccessfully argued for first time before district court that underlying collective bargaining agreement had expired before employee was discharged); *Aluminum Workers International Union v. Chromalloy American Corp.*, 489 F.Supp. 536, 542 (N.D.Miss.1980) (employer argued before arbitrator that employee had resigned, and before district court cited employee's absenteeism as "just cause" for his discharge).

Federal labor policy in general, and the abovementioned decisions in particular, therefore direct that the defendants cannot raise before this Court those arguments not proffered before the arbitrator, and which are not susceptible to independent judicial review.

The Court finds that the Arbitration Committee afforded the defendants ample opportunity to raise substantive defenses in order to contest the IBEW's grievance. At both arbitration proceedings, however, the defendants elected not to enter a defense, choosing instead to bring their dispute to the federal forum. Now the defendants submit that the arbitrator lacked jurisdiction to entertain the grievance be-

cause the agreement allegedly is an unenforceable prehire contract.

■ This Court will not condone the defendants' disregard for the prehire agreement's arbitration provisions. The defendants' challenge to the enforceability of the prehire contract here, like the employers' arguments in *Mooney, Piggly Wiggly, Mogge,* and *Chromalloy,* cannot be sustained because they elected not to contest the contract's enforceability before the Arbitration Committee. This conclusion does not end the Court's analysis, however, for the defendants do raise other issues that require judicial review.

## IV. *Arbitrability*

■ In their Decision and Award, the Arbitration Committee found that Coral Electric Corporation and Beach Electric Corporation constitute a single employer, and ordered both to "pay all of the fringe benefit contributions and wages due and owing pursuant to the collective bargaining agreement." Plaintiff's Motion for Summary Judgment, Exhibit B at 5 (filed Aug. 29, 1983). The employers challenge this decision, contending that the grievance is not arbitrable because Beach Electric Corporation is not a signatory to the underlying contract. The Court disagrees, finding the IBEW's grievance "arguably arbitrable" notwithstanding Beach Electric Corporation's nonsignatory status.

■ The district court's first responsibility in reviewing an arbitration decision is to determine its arbitrability. *Mobil Oil Corp. v. Local 8–766, Oil, Chemical & Atomic Workers International Union,* 600 F.2d 322, 325 (1st Cir.1979). As the Supreme Court of the United States explained in *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964):

> The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has

not agreed to arbitrate, so *a fortiori,* it cannot be compelled to arbitrate if an arbitration clause does not bind it at all.

*Id.* at 547, 84 S.Ct. at 913. Thus, a reviewing court should determine if the parties have contractually agreed to arbitrate and, therefore, if the grievance is "arguably arbitrable." *United Steelworkers v. Warrier & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 585, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960); *International Association of Machinists v. Texas Steel Co.,* 538 F.2d 1116, 1120 (5th Cir.1976).

The pleadings filed in this case make clear that both the IBEW and Coral Electric Corporation have contractually agreed to arbitrate any grievances arising between them. In their Motion for Summary Judgment (filed Aug. 29, 1983), the IBEW encloses a copy of the contract signed by the union representative, along with his affidavit confirming this agreement. Similarly, in their Memorandum in Opposition to the Plaintiff's Summary Judgment Motion (filed Nov. 10, 1983), Coral Electric Corporation encloses an affidavit by Wayne Stewart confirming that his company agreed upon and entered into a prehire agreement with the IBEW. *Id.* ¶ 3.

The IBEW's grievance still remains arbitrable even if Beach Electric Corporation did not sign the prehire contract. The district court's decision in *Iron Workers, Local 790 v. Bostron-Bergman,* 105 L.R.R.M. (BNA) 2633 (N.D.Cal.1980), supplies the logic. In *Bostron-Bergman,* the union alleged that the employer had violated the collective bargaining agreement by creating an alter ego company designed to perform non-union work. The employer attempted to avoid arbitration by arguing that the court could not compel the mediation of a dispute involving a party who had not signed the collective bargaining agreement. The court held otherwise:

> The defect in this argument is simple. The Union is not seeking an order from the court that these two companies arbitrate the dispute. The Union is only asking the court to order the Employer

to arbitrate the dispute. *The fact that the dispute touches upon parties who did not sign the Agreement does not detract from the court's power to compel the Employer to submit its dispute with the Union to arbitration.*

*Id.* at 2636 (emphasis added); see *Ben Gutman Truck Service, Inc. v. Teamsters Local No. 600,* 484 F.Supp. 893, 895 (E.D. Pa.1980) (grievance between union and employer over latter's subcontracting out work to another business is arbitrable although dispute involves party not a signatory to labor agreement); *Joint Board of Cloak, Skirt and Dressmakers Union v. Senco, Inc.,* 289 F.Supp. 513 (D.Mass.1968); *infra* note 12.

Language in the prehire contract here also supports the union's position that its grievance is "arguably arbitrable" notwithstanding the involvement of a nonsignatory. Article II, section 2.09, which prohibits "subletting ... by an individual employer of any work ... to any person, firm or corporation not recognizing the IBEW ..." expressly contemplates that a grievance may arise involving a third party who has not signed the prehire contract. Although the involvement of a nonsignatory here may pose problems regarding the enforceability of the Arbitrator's award, it in no way affects the promises made by the IBEW and Coral Electric Corporation to submit common problems to arbitration.

## V. *Enforcement of the Arbitration Award* [9]

The final issue left to be resolved by the Court is whether the arbitrator's award is enforceable. The IBEW, citing federal labor policy favoring enforcement of arbitration decisions, contends that the award should be enforced. The employers argue in opposition first, that the award is unenforceable because it binds a nonsignatory; and second, that even if the nonsignatory is

liable in part under the arbitrator's decision, such a result can only be ordered by a reviewing court after an independent examination of the substantive legal issues involved. The Court is in substantial agreement with the employers' position.

Resolving the issue of the arbitration award's enforceability requires a review of the Committee's substantive conclusions. Generally, the district court's scope of review of such matters is strictly circumscribed. As one court explained:

It is not the function of the court to review the merits of arbitration awards. The interpretation of a collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction that was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him, because their interpretation of the contract is different than his. An award is legitimate if it draws its essence from the agreement and only when the arbitrator's words manifest an infidelity to the obligation may the courts refuse enforcement of the award.

*San Francisco-Oakland Newspaper Guild v. Tribune Publishing Co.,* 407 F.2d 1327, 1327 (9th Cir.1969) (relying upon the *Steelworkers Triology* ); see *International Association of Machinists v. Texas Steel Co.,* 538 F.2d 1116, 1120–21 (5th Cir.1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977); *Victor Electric Wire and Cable Corp. v. International Brotherhood of Electrical Workers, Local 2014,* 411 F.Supp. 338, 342–43 (D.R.I.1976).

■ The district court's scope of review of an arbitration award is broader, however, if the grievance involves statutorily- or constitutionally-protected individual rights, or if the arbitrator's decision goes beyond the four corners of the contract and

---

**9.** The IBEW has instituted a suit under section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185(a) (1978), to enforce the arbitration order. "[A] section 301 claim is composed of three elements: (1) a claim of violation of (2) a contract (3) between an employer and a labor organization." *Carpenters Local Union No. 1846*

*v. Pratt-Farnsworth, Inc.,* 690 F.2d 489, 502 (5th Cir.1982). The prehire contract here is deemed valid, all challenges to its enforceability having been waived by the defendants, and the IBEW's pleadings do allege the necessary facts to enable this Court to entertain the section 301 claim.

considers statutes or substantive law. *See Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 744–45 & n. 23, 101 S.Ct. 1437, 1446–47 & n. 23, 67 L.Ed.2d 641 (1981) ("Even where the crucial provision in the collective bargaining agreement incorporates the statutory language …, 'the arbitrator has authority to resolve only questions of contractual rights, and this authority remains regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by [the statute].'"); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53, 94 S.Ct. 1011, 1022, 39 L.Ed.2d 147 (1974) (arbitrator's task is to construe the law of the contract, and not the law of the land; the arbitrator merely effectuates the intent of the parties to the contract and should not "invoke public laws that conflict with the bargain between the parties"); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) (the arbitrator "may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement").

The prehire contract here directs the Arbitration Committee to do no more than apply the provisions of the agreement to the grievance under consideration. Faithful to this task, the Committee found Coral Electric Corporation and Beach Electric Corporation to constitute a single employer, and ordered *both* to pay back wages and fringe benefits to the IBEW. Whether this decision is enforceable hinges on two independent findings: First, that the two employers do indeed operate as one; and second, that Beach Electric Corporation is essentially a signatory to the prehire contract and, therefore, is bound to adhere to the agreement's provisions proscribing non-union work and requiring arbitration of grievances.

A fairly substantial amount of proof is required to find single employer status.[10] Courts commonly require proof of the interrelation of operations, common management, centralized control of labor relations, and common ownership, before such a finding is made. *Radio Union v. Broadcast Service, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965); *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 504 (5th Cir. 1982).[11]

In the instant case, the Arbitration Committee found Coral Electric Corporation and Beach Electric Corporation to constitute a single employer without acknowledging the presence of each factor enumerated above. Such an ambiguity normally is not fatal to an arbitration award, because the district court's responsibility in reviewing the substantive conclusions of the arbitrator generally is limited to ensuring that the award draws its "essence" from the underlying contract. But here, the prehire contract neither provides explicitly nor by reference the criteria to be used in determining single employer status. It thus appears to the Court that the Arbitration Committee borrowed from recognized legal theory without so indicating and, more significantly, without contractual authorization. Under these circumstances, the Court is required to broaden its scope of review to include an examination of the

---

**10.** The single employer doctrine is a creation of the National Labor Relations Board (Board), and permits two or more related businesses to be treated as one within the meaning of section 2(2) of the NLRA, 29 U.S.C. § 152(2). *Pratt-Farnsworth, Inc.*, 690 F.2d at 504.

**11.** The Supreme Court also has ruled that a finding of single employer status requires a determination that employees of both employers belong to the same bargaining unit before both entities are bound by the same contract. *South Prairie Construction Co. v. Local No. 627, International Union of Operating Engineers*, 425 U.S.

800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976); *NLRB v. Don Burgess Construction Corp.*, 596 F.2d 378, 386 (9th Cir.1979). Although bargaining unit determinations usually are the exclusive province of the Board, a federal district court entertaining a section 301 suit has the power to make such decisions provided the Board has neither made, nor was going to make, a bargaining unit determination; and provided further that such a decision is necessarily incidental to resolution of a breach of contract claim. *Pratt-Farnsworth, Inc.*, 690 F.2d at 514–19.

"single employer" question in order to be certain that the Arbitration Committee did not substitute its own brand of industrial justice for the law of the contract.

▉▉▉ Even if the Committee was correct in finding the two employers to be one, this Court must still decide whether Beach Electric Corporation is bound to adhere to the prehire contract. Absent such a finding, the Arbitration Committee would lack the authority to order the employer to pay back wages and fringe benefits. The duty to adhere to the prehire contract's provisions proscribing the use of nonunion laborers to perform union work, like the duty to arbitrate, cannot precede judicial determination that the employer is in fact bound under the contract. "Whether or not one is a party to a collective bargaining contract is, when the question is disputed, a question for the courts and not for the arbitrator." *Las Vegas Local Joint Executive Board of Culinary Workers v. Las Vegas Hacienda, Inc.*, 383 F.2d 667, 668 (9th Cir. 1967), *cert. denied*, 390 U.S. 958, 88 S.Ct. 1037, 19 L.Ed.2d 1153 (1968) (court held that corporation operating casino at hotel which had contract with culinary workers' union and bartenders' union was not owned, operated, or substantially controlled by hotel and, therefore, was not subject to terms of hotel's agreement with unions); *see Amalgamated Clothing and Textile Workers Union v. Ratner Corp.*, 602 F.2d 1363, 1368 (9th Cir.1979); *Joint Board of Cloak, Skirt and Dressmakers Union v. Senco, Inc.*, 289 F.Supp. 513, 526–27 (D.Mass.1968);[12] *cf. John Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) (court decides whether successor-nonsignatory to collec-

tive bargaining agreement is bound by contract's arbitration provisions).

▉▉▉ In conclusion, the Court confirms the Arbitration Committee's award against Coral Electric Corporation in all material respects, because the employer's arrangement with Beach Electric Corporation violated the prehire contract even if the two companies did not constitute a single employer. As for Beach Electric Corporation, the Court finds that additional proceedings are necessary to establish whether the employer should be treated along with Coral Electric Corporation as a single employer, and whether Beach Electric Corporation is bound to adhere to the prehire agreement.

### V. Conclusion

By way of review, the Court finds that further proceedings are necessary to determine whether Coral Electric Corporation and Beach Electric Corporation constitute a single employer, and whether the latter is bound to adhere to the prehire contract. Accordingly, the IBEW's motion for summary judgment must be DENIED.

In the course of its analysis, the Court has resolved several issues. The Court finds that the employers waived their right to challenge the enforceability of the prehire contract by not raising the issue before the Arbitrator. Thus, the IBEW can seek enforcement of the prehire contract in its section 301 action. The Court also finds that all aspects of the IBEW's grievance are "arguably arbitrable," although Beach Electric Corporation did not sign the prehire contract. Finally, the Court confirms the Arbitration Committee's award against Coral Electric Corporation, but enforce-

---

**12.** Portions of the district court's decision in *Senco, Inc.* are particularly revealing.

> Plaintiffs' argument that Maco [the nonsignatory] is bound by the arbitrator's award is a classic example of bootstrapping. Plaintiff relies heavily upon Article 69 of the agreement which gives the arbitrator authority to determine whether a firm or corporation is a subsidiary, auxiliary or affiliate of a signatory, in this case Senco. But the arbitrator's finding that Maco is such a firm or corpora-

> tion is binding only on the parties to the contract. Certainly, two parties cannot by agreement arrange to bind a third party. *Accordingly, until it should be determined by a court that Maco, by virtue of its relationship to Senco, is a party to the contract, the arbitrator's award does not bind Maco.* The arbitrator's finding that Maco is a subsidiary of Senco is binding only on Senco and not on Maco. 289 F.Supp. at 527 (emphasis added) (footnote omitted).

ment of the award must await final resolution of the issues pertaining to Beach Electric Corporation.

## ORDER

### On Motion for Reconsideration

THIS CAUSE has come before the Court upon the Defendants' motion for reconsideration of the Court's earlier order dated December 13, 1983. In the previous order, the Court held, *inter alia*, that the Defendants had waived their right to contest the enforceability of the prehire agreement by not arguing before the Arbitration Committee that Coral Electric Corporation had repudiated the contract. Defendants now urge the Court to reconsider this conclusion in light of *Cable Guide Railing Construction Co. v. Iron Workers*, 543 F.Supp. 405 (W.D.Pa.1982). For the reasons set forth below, the Court upholds its previous order of December 13, 1983, and DENIES Defendants' motion for reconsideration.

The *Cable Guide* court had to decide whether an employer had repudiated its prehire contract with a union and trade association. In June 1979, Cable Guide Railing Construction Company signed a prehire agreement with the Iron Workers Local 348 and the Southern Tier Builders Association, enabling Cable Guide to obtain union referrals to complete the job. Cable Guide continued to adhere to the prehire agreement through September 1979. In 1980, however, the company knowingly failed to comply with the agreement's bonding requirements, despite notification from Local 348 that such bonding was necessary under the terms of its agreement. In the Summer of 1981, Cable Guide failed to rely upon the prehire agreement to obtain referrals from the union, choosing instead to employ members of another union which was not a signatory to the agreement between the Southern Tier Builders Association and Iron Workers Local 348. At no time during this period did Local 348 ever represent a majority of Cable Guide's employees.

The district court found that Cable Guide had properly repudiated the prehire agree-

ment before Local 348 attained majority support of Cable Guide's employees. Because the contract was found unenforceable, the court vacated the arbitration award. *Significantly, Cable Guide did NOT even appear at the arbitration hearing.*

The instant case differs from Cable Guide in one critical respect. The Defendants here—by their own admission, Memorandum of Law in Support of Defendants' Motion for Reconsideration, Affidavit of Michael E. Jackson (filed Dec. 27, 1983)—did appear before the Arbitration Committee to contest the IBEW's grievance. If a party avails itself of an arbitrator's jurisdiction, then it cannot later attempt to negate an adverse ruling by asserting objections on grounds which he had knowledge of prior to the award. *See* cases and analysis in *IBEW v. Coral Electric and Beach Electric*, No. 82–8459–CIV–JAG, slip op. at 8–12 (S.D.Fla. Dec. 13, 1983).

Nowhere in their memoranda do Defendants argue that their presence before the arbitrator was conditional on a preliminary finding that the prehire contract was still enforceable. In fact, their posture before the Arbitration Committee implicitly ratifies the prehire contract absent an affirmative showing by Defendants that they contested the enforceability of the contract and the arbitrator's jurisdiction to entertain the grievance. Thus, *Cable Guide* does not control this case, and the Court's previous order of December 13, 1983 reflects this fact.

Defendants also assert that Michael Jackson's affidavit (filed Dec. 27, 1983) raises a question of whether they did in fact object to the prehire contract's enforceability. The Court disagrees. Admittedly, Rule 56(c), Fed.R.Civ.P., places the burden of proof on the movant to prove a negative, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), that there exists "no genuine issue as to any material fact ...." In its order of December 13, 1983, the

Court found that Plaintiff had met this burden. Mr. Jackson's affidavit is no more than an attempt by Defendants to proffer some evidence that might conceivably shake this Court's confidence in its prior ruling on this matter. Unfortunately for Defendants, they do not succeed. Defendants essentially ask the Court to reverse a portion of its prior order because it is *conceivable* that there exists a genuine issue of material fact; they seek to make an already difficult burden almost impossible to satisfy. If Defendants' position is correct, then "there could hardly ever be a summary judgment, for at least a slight doubt can be developed as to practically all things human." C. Wright, *Law of Federal Courts* § 99, at 495 (1976). Such a result would be "a pity in this critical time of overstrained legal resources." *Id.* n. 18 (quoting *Chubbs v. City of New York*, 324 F.Supp. 1183, 1189 (E.D.N.Y.1971).

In conclusion, after considering the totality of circumstances heretofore established in the Court's order of December 13, 1983, the Court finds that Defendants' additional memorandum and affidavit do not raise even a reasonable doubt that they contested the enforceability of the prehire contract before the Arbitration Committee.