WILLIAM R. NASH, INC., a Florida corporation,
Plaintiff/Counter-Defendant,

v.

LOCAL UNION NO. 719, BROWARD COUNTY, FLORIDA, OF the UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPEFITTING INDUSTRY OF THE U.S. AND CANADA, a labor organization, Defendant/Counter-Plaintiff.

No. 84–6758–Civ.

United States District Court,
S.D. of Florida,
Civil Division.

Nov. 12, 1985.

**1018**

William R. Radford, Mershon Sawyer Johnston Dunwody & Cole, Miami, Fla., for plaintiff/counter-defendant.

Robert A. Sugarman, Sugarman & Susskind, P.A., Miami, Fla., for defendant/counter-plaintiff.

## ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF WILLIAM R. NASH, INC. AND AGAINST DEFENDANT LOCAL UNION NO. 719

HOEVELER, District Judge.

THIS CAUSE came on for hearing on Cross-Motions for Summary Judgment filed by Plaintiff/Counter-Defendant, WILLIAM R. NASH, INC., a Florida corporation (hereinafter referred to as "Nash"), and LOCAL UNION NO. 719, BROWARD COUNTY, FLORIDA, OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE U.S. AND CANADA, a labor organization (hereinafter referred to as "Local 719"), Defendant/Counter-Plaintiff, on September 6, 1985 at 9:00 a.m., before the Court. Both sides in the litigation were represented by counsel. The Court having held hearing and being otherwise fully advised in the premises,

IT IS ORDERED AS FOLLOWS:

The opinion of the Court is to be found in the following summary of undisputed facts and conclusions of law.

### UNDISPUTED FACTS

1. Nash is a Florida corporation engaged in the building and construction industry, an industry affecting commerce, with its principal place of business in Dade County, Florida.

2. Employees of Nash are hired for a particular project and are usually laid off upon completion of the project.

3. Defendant Local 719 is a labor organization representing employees in the building and construction industry, an industry affecting commerce.

4. On or about September 11, 1980, without any prior negotiation, Miami Industrial Plumbing, Inc., Nash's predecessor, entered into a collective bargaining agreement (hereinafter referred to as the "1980 prehire agreement" or "agreement") with Local 719, in accordance with § 8(f) of the National Labor Relations Act ("NLRA") 29 U.S.C. § 158(f).

5. Article IV, Section 2 of the 1980 agreement provides that:

"The Hydro-Mechanical Contractors of Broward County, Inc., a nonprofit corporation, hereinafter referred to as the 'Association', and the independent licensed plumbing, heating, and piping contractors of Broward County are hereby recognized as bargaining agents for the EMPLOYERS of Broward County, Florida."

6. At no time on or after the date Nash signed the 1980 agreement did a majority of Nash employees ever assent to Nash's participation in the Hydro-Mechanical Contractors of Broward County, Inc. (hereinafter referred to as "Hydro") or any other multi-employer bargaining group or association.

7. At no time on or after the date Nash signed the 1980 agreement did Nash employ any employees who were members of Local 719. At no time on or after the date Nash signed the 1980 agreement with Local 719, had Local 719 attained or established majority status among Nash's employees in accordance with § 9 of the NLRA, 29 U.S.C. § 159, at any Nash project in Broward County.

8. The 1980 agreement expired by its terms on April 30, 1982. Since April 30, 1982, Nash has neither negotiated with nor signed any other agreement with Local 719.

9. On or about May 1, 1982, Local 719 and Hydro entered into a bargaining agreement effective May 1, 1982 until April 30, 1983.

10. On or about May 1, 1983, Local 719 and Hydro entered into a collective bar-

gaining agreement effective May 1, 1983 until June 30, 1985 (hereinafter referred to as the "1983–85 agreement").

11. Article XI, Section 2 of the 1983–85 agreement provides:

"Any question, grievance or complaint involving alleged violations, interpretation or application of this Agreement, other than those involving hiring, or payment or non-payment of wages or fringe benefits, may be submitted to the Joint Arbitration Board."

12. By letter dated September 21, 1983, Nash informed Local 719 that in the event the 1980 agreement did not terminate by its terms on April 30, 1982, Nash was repudiating its agreement with Local 719 as of the date of the letter. After being informed by Local 719 that it considered Nash bound by the 1983–85 agreement which had been entered into by Hydro and Local 719, Nash again informed Local 719 that it had repudiated its agreement with Local 719 as of September 21, 1983.

13. In May, 1984, Nash performed some plumbing work for an air conditioning contractor at the Hollywood Medical Center in Broward County. In hiring employees for that job, Nash did not utilize Local 719's hiring hall or the referral procedures set forth in the 1983–85 collective bargaining agreement. Nash also did not abide by that agreement's wage provisions. Finally, Nash did not make any of the fringe benefit contributions specified in that agreement.

14. By letter dated May 25, 1984, Nash was notified that Local 719 was filing a grievance against Nash with a Joint Arbitration Board (hereinafter referred to as "Board") pursuant to the 1983–85 agreement.

15. The grievance alleged that commencing May 21, 1984, Nash had breached Articles X and VI of the 1983–85 agreement by using persons not referred from the Local 719 hiring and referral system to perform plumbing work and by not paying the agreement's wage rates.

16. On June 4, 1984, an arbitration hearing was held on the grievance by the Board. The members of the Board, which was meeting for the first time in years, consisted of three employer members of Hydro and three members of Local 719. Before the matter proceeded, Nash distributed and read a position statement. That statement read in pertinent part:

"So that there can be no misunderstanding, we are submitting this position statement to you and your Board detailing the position which William R. Nash, Inc. is taking in response to the above-referenced grievance.

"First, by submitting this position statement and by appearing at the hearing scheduled for 3:00 p.m. today, we wish to make it clear that we are not waiving our position that your Joint Board has no jurisdiction to hear Local 719's grievance because there is no collective bargaining agreement in effect between William R. Nash, Inc. and Plumbers and Pipefitters Local Union 719.

"Under federal labor law, it is clear beyond question that the Courts rather than Arbitrators or arbitral bodies such as your Joint Board have exclusive jurisdiction to determine whether a contract is in existence between an employer and a union. Proceeding further, even if there is a contract, which is not the case here, only the Courts can decide the question as to whether a grievance is arbitrable under such contracts.

"If Plumbers and Pipefitters Local Union 719 has consulted its labor lawyer, there is no doubt in our mind that this principle has been explained to Local 719.

"We also urge you to confirm this point with your own counsel before proceeding.

"By filing a grievance against William R. Nash, Inc. when there is no bargaining agreement in existence and by convening this Joint Board, when this Joint Board clearly has no jurisdiction, Local 719, in our opinion, is engaging in acts which could constitute malicious prosecution.

"By appearing today, we are merely asserting our position without in any way waiving that position and will not participate further in this proceeding."

17. After distributing and reading the statement, Nash's representatives left. Local 719's Business Manager then proceeded to present the grievance repeating what was stated in the grievance. Thereafter, a member moved the Board to find that Nash had violated the 1983–85 agreement. The Board's approval was both instantaneous and unanimous. Neither Nash's position nor any of the aforementioned correspondence between Nash and Local 719 was introduced or discussed. Thereafter, the Board agreed that Local 719's counsel would prepare the Board's decision, which would be reviewed and signed by its Chairman. The entire proceeding of the Board took ten minutes.

18. The Board, after a summary review, concluded that Nash recognized Hydro as its bargaining agent when Nash signed the 1980–82 agreement and thereafter failed to terminate this designation. Therefore, it was concluded that Nash was bound by and breached the 1983–85 agreement by failing to use the hiring procedures established in Article X and failing to pay the wages and fringe benefit contributions required by the agreement.

19. On or about September 13, 1984, Plaintiff filed a complaint seeking a declaratory judgment that from September 21, 1983 Plaintiff has not been bound to any bargaining agreement and simultaneously moved to vacate the June 4, 1984 arbitration award on the ground that the Board lacked jurisdiction to issue the award. Defendant counterclaimed for enforcement of the arbitration award, enforcement of the 1983–85 agreement between Local 719 and the Hydro-Mechanical Contractors Association of Broward County against Nash, damages, and reasonable attorney's fees and costs.

20. Concluding that the matter could be decided on cross-motions for summary judgment, counsel jointly moved on April 19, 1985 to remove the matter from the Court's trial calendar and the motion was granted.

21. On or about June 3, 1985, Local 719 moved for partial summary judgment to confirm the award or alternatively for enforcement of the aforementioned 1983–85 agreement against Nash. On or about June 21, 1985, Nash moved for summary judgment. A hearing on the parties' cross-motions for summary judgment was held on September 6, 1985. Post-hearing memoranda were filed by Local 719 and Nash on September 11, 1985 and September 24, 1985 respectively.

**I. Does the Court have jurisdiction to review the Joint Board's decision and award?**

It is well-settled that federal labor policy favors the resolution of grievances through the arbitral process. *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). It is also well-settled that the question of interpretation of a collective bargaining agreement is a question for the arbitrator, *United Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), and courts have a limited role in reviewing an arbitrator's decision and award, which will not be disturbed unless it can in no rational way be derived from the agreement or unless there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop. *Teamsters Local Union No. 30 v. Helms Express, Inc.*, 591 F.2d 211 (3d Cir.1979).

It is clear, however, that a party cannot be required to submit to arbitration any dispute which he is not obligated by agreement to submit. *John Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). Where the existence of a valid bargaining agreement is disputed by one of the parties, the issue of existence

is for the courts only to decide. *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The duty to adhere to the prehire contract's provisions.... like the duty to arbitrate, cannot precede judicial determination that the employer is in fact bound under the contract. *International Brotherhood of Electrical Workers Local No. 323 v. Coral Electric,* 576 F.Supp. 1128 (S.D.Fla.1983).

 The majority of courts which have considered the issue faced by the Court here, namely whether repudiation of a § 8(f) prehire agreement also removes the agreement to arbitrate disputes arising under the agreement, have held that an assertion that a § 8(f) prehire agreement has been repudiated by an employer raises a question as to whether the parties *have* an agreement to arbitrate and is thus for the court to decide. *Mesa Verde Construction v. Northern California District Council of Laborers,* 598 F.Supp. 1092 (N.D.Cal. 1984); *Ion Construction v. District Council of Painters,* 593 F.Supp. 233 (N.D.Cal. 1984); *Laborers v. Robles Concrete Co.,* 149 Cal.App.3d 289, 196 Cal.Rptr. 776 (1983). Therefore, the Court in this cause has jurisdiction over the dispute pursuant to 29 U.S.C. § 185.

II. Did Nash waive the defenses of non-enforceability and repudiation by failing to raise them at the Joint Board meeting?

 Waiver of defenses occurs as a matter of law when a party fails to challenge the jurisdiction of the arbitrator until *after* the adversed decision was rendered. *Coral Electric,* 576 F.Supp. at 1140 (emphasis added). In the instant cause there was no waiver because Nash challenged the Joint Board's jurisdiction and the very existence of the agreement *before* the adverse decision was entered. By handing out its position letter and reading it, Nash raised the issues of the Joint Board's jurisdiction and the prehire agreement's enforceability before the Board. If Nash had remained at and participated in the meet-

ing, then it could be construed that Nash had waived its challenge to the Joint Board's jurisdiction. As Nash left the meeting immediately after reading its position letter, there is no question that Nash preserved its challenges. Compare *Coral Electric,* 576 F.Supp. at 1140 (finding waiver of defense of arbitrator's lack of jurisdiction) with *Cable Guide Railing Construction Co. v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, Local Union No. 348,* 543 F.Supp. 405 (W.D.Pa.1982).

III. Was the prehire agreement enforceable?

 It is undisputed that: (a) Local 719 never enjoyed majority support among Nash's employees; and (b) a majority of Nash's employees did not assent to Nash's becoming a member of Hydro, the multi-employer bargaining unit. Because the September 19, 1980 agreement between Nash and Local 719 was entered into at a time when Local 719 did not enjoy the support of a majority of Nash's employees, the 1980 agreement was a prehire agreement under § 8(f) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(f).

Section 8(f) of the NLRA "exempts construction industry employers and unions from the general rule precluding a union and an employer from signing a collective bargaining agreement recognizing the union as the exclusive bargaining representative when in fact only a minority of the employees have authorized the union to represent their interests. *NLRB v. Iron Workers,* 434 U.S. 335, 54 L.Ed.2d 586, 98 S.Ct. 651 (1978) ..." *Jim McNeff, Inc. v. Todd,* 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983).

 A project-by-project construction industry employer who signs a § 8(f) prehire agreement may repudiate that prehire agreement and refuse to apply any of its terms at any project where the union failed to establish its majority status among the employer's employees. *McNeff,* 461 U.S. at 271, 103 S.Ct. at 1759; *Painters*

*Local Union No. 164 v. Epley,* 764 F.2d 1509 (11th Cir.1985); *NLRB v. Haberman Construction Co.,* 641 F.2d 351 (5th Cir. 1981); see also *Baton Rouge Building and Construction Trades Council v. E.C. Schafer Construction Co.,* 657 F.2d 806 (5th Cir. Unit A 1981). Since there was no majority support of Local 719 by Nash's employees at the Hollywood job site, the prehire agreement was voidable by Nash, and thus unenforceable by the Board after Nash in fact did repudiate it.

■ Nash's right to repudiate § 8(f) agreements at projects where the union does not enjoy majority status is not limited to the initial prehire agreement entered into with the union. *Epley,* 764 F.2d at 1514. Even if Nash, by signing the 1980 prehire agreement, had become bound to the 1983–85 agreement between Local 719 and Hydro, the 1983–85 agreement remained a voidable agreement which Nash was entitled to repudiate at any project where Local 719 had not established majority status.

## IV. Did Nash repudiate the agreement?

■ Whether a § 8(f) agreement has been effectively repudiated is a matter of substantive federal labor law and requires no interpretation or application of the terms or provisions of the prehire agreement itself. In order to constitute a repudiation of a prehire agreement, the employer's conduct must be sufficient to put the union on notice that the agreement is terminated before the union attains majority status at the jobsite in dispute. *Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan v. Harkins Construction and Equipment Co.,* 733 F.2d 1321 (8th Cir.1984); *Washington Area Carpenters' Welfare Fund v. Overhead Door Co.,* 681 F.2d 1, 9 n. 38 (D.C.Cir.1982), cert. denied, 461 U.S. 926, 103 S.Ct. 2085, 77 L.Ed.2d 296 (1983). See also *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.,* 746 F.2d 557 (9th Cir.1984). As the Court in *Robles,* supra, noted:

"There are important distinctions between collective bargaining agreements and prehire agreements. 'Congress intended that prehire agreements *not* have the same status as contracts between an employer and a recognized majority union.' (*Washington Area Carpenters' v. Overhead Door Co.,* 681 F.2d 1, 9 (D.C. Cir.1982), cert. denied, 461 U.S. 926 [103 S.Ct. 2085, 77 L.Ed.2d 296])." (emphasis added).

*Id.,* 149 Cal.App.3d at 293, 196 Cal.Rptr. 776.

This case is distinguishable from cases like *Rochdale Village, Inc. v. Public Service Employees Union,* 605 F.2d 1290 (2d Cir.1979), which involved full-fledged collective bargaining agreements, not prehire agreements (which give the employer greater unilateral powers than those enjoyed by the employer under collective bargaining agreements, see *Painters District Council v. Johnson,* 566 F.Supp. 592 (W.D. Mo.1983)), and where the issue of whether the collective bargaining agreement had been repudiated or terminated called for "arbitral resolution of questions arising under the collective bargaining agreement." *Laborers v. Robles Concrete Co.,* supra, 149 Cal.App.3d at 292–93, 196 Cal.Rptr. 776. See also *California Trucking Ass'n. v. Brotherhood of Teamsters,* 679 F.2d 1275, 1282 (9th Cir.1981), cert. denied, 459 U.S. 970, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982). In *Rochdale* and *California Trucking,* the courts had to determine whether the party relying on the bargaining agreement and seeking arbitration had engaged in inconsistent conduct and whether the inconsistent conduct was sufficient to repudiate the agreement, thus necessitating an evaluation of terms of the agreement, issues not germane to the question of unilaterally repudiable § 8(f) prehire agreements. The issue before the Court in the instant cause, whether a prehire agreement has been lawfully terminated by repudiation, does not depend on the termination provision or any other provision of the prehire agreement. See *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.,* 746 F.2d 557, 566–67 (9th

Cir.1984) (employer entitled to repudiate prehire agreement at any time before union achieved majority status without regard to the termination procedures set forth in the prehire agreement); *Painters District Council v. Johnson,* 566 F.Supp. 592 (W.D. Mo.1983) (employer and union cannot limit by contract an employer's right to repudiate a § 8(f) prehire agreement).

This cause can also be distinguished from *Nolde Brothers v. Bakery Workers Union,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), *John Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), *Steelworkers v. American Aluminum Corp.,* 334 F.2d 147 (5th Cir.1964), and *Standard Drywall v. Painters, No. 48,* 111 L.R.R.M. 2723 (S.D.Colo. 1982), all of which involved disputes over the interpretation of an agreement and which involved disputed conduct or obligations arising or vesting *during* the term of a collective bargaining agreement. None of the cases raised the issue of whether the underlying agreement was unenforceable.

The case of *Carpenters 46 Northern California Counties Conference Board v. Meddles,* 535 F.Supp. 775, 779 (N.D.Cal. 1981), cited by Defendant Local 719 for the proposition that repudiation of a prehire agreement is for an arbitrator to decide, has been effectively overruled or ignored by the later decisions emanating from the Northern District of California in *Ion Construction v. District Council of Painters, No. 16, supra,* and *Mesa Verde Construction Co. v. Northern California District Council of Laborers, supra,* which have held to the contrary.

 Defendant also cites the case of *Gigliotti Corp. v. Building and Construction Trades Council of Philadelphia and Vicinity,* 583 F.Supp. 396, 401 (E.D.Pa. 1984) for the proposition that questions as to whether a particular agreement is a prehire agreement and if so, whether the agreement has been properly repudiated are questions of "interpretation of the contract and must be decided by the arbitrator." The above-mentioned proposition, contained in dicta in *Gigliotti, supra,* is contrary to the weight of authority in cases involving construction industry prehire agreements. Whether an agreement is a full-fledged collective bargaining agreement or a § 8(f) prehire agreement does not depend on interpretation of any contractual provision. Rather, the question turns solely on whether the union had established majority representation of the employer's employees at the jobsite in question at the time the agreement was made. Similarly, whether an employer has properly repudiated a § 8(f) prehire agreement is not an issue of contract interpretation but is instead a matter of whether the employer has given the union reasonable notice that it considers the agreement terminated and will not be bound by any of the agreement's terms after the date of repudiation.

Having decided that Nash was entitled to repudiate the agreement, and that the issue of repudiation raises the question of the agreement's existence, and is therefore within the Court's, rather than the arbitrator's jurisdiction, the Court examines Nash's actual repudiation of the agreement to determine whether it afforded the union adequate notice.

 As set forth in the undisputed facts, Nash sent Local 719 a letter on September 21, 1983 stating that any agreement that may have been in effect between Nash and Local 719 was being repudiated at Nash's will as of that date. Since the union did not enjoy a majority status among Nash's employees at any of Nash's projects on that date, the prehire agreement was effectively repudiated on that date. See *Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. Harkins Construction & Equipment Co., Inc.,* 733 F.2d 1321, 1326 (8th Cir. 1984) (prehire agreement properly repudiated upon employer's mailing certified letter to union which specifically terminated all agreements between parties); *Contractors, Laborers and Teamsters Health & Welfare Plan v. D.A. Construction Co.,* 725 F.2d 460, 461 (8th Cir.1984); *Ion Con-*

*struction v. District Council of Painters,* 593 F.Supp. 233. It is the Court's conclusion that the September 21, 1983 letter from Nash to the union was sufficient to repudiate the agreement between the parties.

■ Further, the Court takes notice that the grievance urged by Local 719 does not even appear to be properly arbitrable by the terms of the agreement itself, regardless of whether repudiation had occurred. Local 719's grievance alleged that Nash had violated the 1983–85 version of the prehire agreement by using, on a Broward County construction project, persons not referred from the union's hiring hall to perform work contemplated by the agreement, and by not paying the worker the wage rates prescribed by the agreement. However, Article XI of the agreement, which provides for arbitration of grievances by the Joint Board, expressly provides that grievances "other than those involving hiring, or the payment or non-payment of wages or fringe benefits," may be submitted to the Joint Board. Thus, the grievance urged by the union was not arbitrable by the Board for lack of jurisdiction regardless of whether repudiation had occurred.

V. Was Nash precluded from repudiating the agreement because it allegedly designated Hydro as its collective bargaining agent?

■ Local 719 contends that because Nash allegedly designated Hydro as its collective bargaining agent by virtue of its signing of the 1980 agreement with Local 719, Nash could not repudiate any agreement entered into by Hydro on Nash's behalf unless the union lacked majority status in Hydro, the multi-employer bargaining group. The Court notes that there is no assertion or showing in the record that Local 719 in fact enjoys majority status among the employees of all employers for whom Hydro is the multi-employer bargaining unit. Assuming *arguendo* that Nash's signing of the 1980 agreement did effectively designate Hydro as Nash's collective

bargaining agent for future agreements, the *Epley* case, 764 F.2d 1509, makes it clear that even where, by signing a prehire agreement, an employer has designated a multi-employer association as its bargaining agent, the agreement remains a prehire agreement which is repudiable by the employer, not the multi-employer association, as long as the union lacked majority status at any jobsite where the employer sought to repudiate the agreement.

■ Moreover, Nash could not, without the assent of its employees, properly designate Hydro as its multi-employer bargaining unit. *Baton Rouge Building and Construction Trades Council v. E.C. Schafer Construction Company, Inc.,* 657 F.2d 806 (5th Cir.1981); *Electrical Workers Health and Welfare Fund v. Electric by Slaton, Inc.,* Case No. 80–2419–Civ–JWK (April 16, 1982, S.D.Fla.). The Fifth Circuit in Baton Rouge rejected the argument that a § 8(f) prehire agreement becomes a collective bargaining agreement not unilaterally repudiable if the prehire agreement contains a provision whereby the employer agrees to membership in a multi-employer bargaining unit in which the union enjoys majority status. *Id.,* 657 F.2d at 811–12.

Since the factual record is devoid of a showing of any assent on the part of a majority of Nash's employees to be a part of Hydro, the 1980 prehire agreement remained a prehire agreement which was repudiable by Nash before Local 719 attained majority status among Nash's employees at any Nash jobsite in Broward County.

## CONCLUSION

Based upon the foregoing, the motion of Nash for summary judgment to vacate the June 4, 1984 award of the Joint Board is **GRANTED.** The motion of Nash for summary judgment on its request for a declaratory judgment, that from September 21, 1983 to date Nash has not been bound by any collective bargaining agreement with Local 719, is also **GRANTED.** The motion of Local 719 for partial summary judgment confirming the award of the Joint Board

and in the alternative, for enforcement of the 1983–85 agreement against Nash, is DENIED.

### ATTORNEY'S FEES

Nash has urged the Court to award it attorney's fees incurred in bringing this action, as well as its reasonable costs. Because this suit is brought under § 301 of the LMRA, the award of attorney's fees is clearly within the discretion of the trial court. *International Association of Machinists v. Texas Steel Co.*, 538 F.2d 1116, 1121–22 (5th Cir.1976), cert. denied, 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977). The parties are instructed to file separate memoranda on the issue of the award of attorney's fees to Plaintiff within twenty (20) days after the entry of this Order.